CHARLES FRESHWATER *and* ILA MAE FRESHWATER

*v.*

ALBERT BOOTH AND IDA BELLE BOOTH, EXECUTRIX OF THE

ESTATE OF FISHER BOOTH, *Deceased*

(No. 13700)

Decided March 22, 1977.

*Frankovitch & Anetakis, Carl N. Frankovitch* for appellants.

*Bachmann, Hess, Bachmann & Garden, William D. Wilmoth, R. Noel Foreman, Jordan & Wilson, Ronald E. Wilson* for appellees.

NEELY, JUSTICE:

This is a case about inadequate damages. The plaintiffs asserted that the damages were clearly too low in light of the evidence and requested that we reverse and remand on the question of damages alone, or in the

alternative reverse and remand for a new trial on all issues. The defendants argued that the inadequate verdict was either a defendant's verdict perversely expressed or, alternatively, a legitimate compromise verdict which was sufficiently in accord with the evidence to withstand appellate review.

This is the quintessential, crossing center line, automobile accident case; nevertheless, the diversity of reasonable alternatives for handling a clearly inadequate jury award presents the Court with an opportunity to clarify this subject and formulate some functional rules for the orderly classification of inadequate judgments.

The facts of this particular case are important only insofar as they demonstrate that liability was seriously contested and the damages included pain and suffering. On the day of the accident the plaintiffs, Ila Mae Freshwater and Charles Freshwater, an elderly couple, were traveling west on Hardin's Run Road in Hancock County, and the defendant, Albert Booth, a young and inexperienced driver, was traveling east on Hardin's Run Road, operating a 1967 pick-up-truck. The plaintiffs alleged that the defendant's vehicle went across the center line and struck their vehicle, which Mrs. Freshwater was driving.

All special damages were stipulated for both plaintiffs and defendants. The plaintiffs' vehicle was a total loss in the stipulated amount of $3,095.00; the plaintiff, Charles Freshwater, sustained personal injuries which resulted in medical and hospital expenses in the amount of $2,044.58; the plaintiff, Ila Mae Freshwater, sustained personal injuries which resulted in medical and hospital expenses in the stipulated amount of $914.45; and, the defendants' vehicle was damaged in the stipulated amount of $900.00. Undisputed testimony revealed that both plaintiffs sustained personal injuries and were removed from the accident in an ambulance. Ila Mae Freshwater sustained "multiple contusions of the arms, chest, legs, and a small tip fracture of the lateral malleolus of the ankle." Mrs. Freshwater was hospitalized for

twelve days and the uncontroverted testimony demonstrated that she incurred pain and suffering as a result of the injuries.

Mr. Freshwater sustained injuries which consisted of "multiple contusions of the head, neck, forearm, lower leg, with a positive diagnosis of a fractured patella." He received pain medication while confined in the hospital and after initial hospital treatment, he received extended care service and was forced to use a wheelchair because he was unable to walk. As a result of the injuries he sustained, Mr. Freshwater used a cane at the time of trial. Mr. Freshwater introduced medical evidence that he suffered a permanent disability as a result of the accident and that in the future he would continue to suffer pain in the knee cap. There was further testimony that the accident aggravated a pre-existing arthritic condition.

The court properly instructed the jury that if they should find in favor of the plaintiffs that the amount of damages "must be in an amount which would reasonably, fairly, and adequately compensate [them] for [their] damages and loss." In spite of that instruction the jury returned a verdict in favor of the plaintiffs which was for the precise amount of the stipulated special damages, i.e. $5,139.58 for plaintiff Charles Freshwater and $914.45 for plaintiff Ila Mae Freshwater, and no award whatsoever was given for pain, suffering, and permanent injury, all of which had been conclusively proven.

The defendants strongly contested the issue of liability, and the defendant, Albert Booth, testified that he observed plaintiffs' automobile swerve from the right side of the roadway to the left side in an area close to some mail boxes and then begin to swerve back to the right side of the road immediately before the collision. Mr. Booth testified that he was traveling at a speed of from 20 to 25 miles per hour and that before the collision his vehicle did not cross the center line, which was plainly visible. The defendants also suggested that Mrs.

Freshwater had reason to be in a hurry on the day of the accident, since she and her husband anticipated that they might be late for a doctor's appointment in Steubenville, Ohio, due to their late start from home that morning. After the accident Mrs. Freshwater told the investigating officer that she had been driving at a speed of approximately forty miles per hour at the time of the accident; however, at trial Mrs. Freshwater testified that she was driving at a speed of between 20 and 25 miles per hour as she approached the site of the accident. The investigating officer testified that the width of the road at the point of the accident was approximately fourteen feet and that after the accident the plaintiffs' vehicle was off the roadway on the right berm, almost in contact with a stone wall. He also testified that the wheels of the defendants' vehicle were not across the center line at the scene of the accident but were very close, and that the left front portion of the defendants' vehicle was in the westbound or the plaintiffs' lane of traffic.

Plaintiffs' testimony indicated that the Freshwater vehicle was operated entirely in the right lane of traffic. The defendant, Ida Belle Booth, a passenger in the vehicle operated by the defendant, Albert Booth, admitted that after the accident the left front portion of defendants' truck, or the wheels themselves were across the center line. The plaintiff, Charles Freshwater, testified that the defendants' vehicle crossed the center line and struck the plaintiffs' vehicle.

These facts demonstrate that the jury could have decided the question of liability either way and also that if the plaintiffs were entitled to recover anything at all, they were entitled to recover some reasonable amount in excess of the stipulated special damages for pain, suffering, and substantial inconvenience, the existence of which, if not the degree, was uncontroverted.

I.

In order to give a principled and reasoned analysis of why the Court must reverse this case and remand it for

a new trial on all issues, as opposed to adopting one of three other alternatives, *i.e.* accepting the judgment as a defendant's verdict perversely expressed, reversing on the question of damages alone, or accepting the judgment as a legitimate and adequate compromise verdict under all the circumstances, it is necessary to develop a typology of inadequate judgments and demonstrate why the facts of this case mandate a particular result.

## TYPE 1:

The easiest type of inadequate jury award is where the plaintiff would have been entitled to a directed verdict on liability as a matter of law, and the damages are inadequate even when viewed most strongly in favor of the defendant. In this type of case an appellate court need not agonize about reversing and remanding for a new trial on the issue of damages alone and that is the proper course. The following West Virginia cases represent an application of this rule of law: *Hall v. Groves*, 151 W. Va. 449, 153 S.E.2d 165 (1967); *Delong v. Albert*, 157 W. Va. 874, 205 S.E.2d 683 (1974).[1]

## TYPE 2:

The second type of case is one where liability is strongly contested and the award of damages is clearly inadequate if liability were proven. The case at bar falls into this category. In this situation an appellate court cannot infer from the jury verdict alone whether the

---

[1] In *Hall v. Groves*, 151 W. Va. 449, 153 S.E.2d 165 (1967) uncontroverted evidence set plaintiff's pecuniary loss at $4,007.21 and indicated that the plaintiff suffered severe and permanent injuries. In reviewing the record, the Supreme Court of Appeals entertained no doubt as to liability: undisputed evidence disclosed that on proper motion the plaintiff would have been entitled to a directed verdict on defendant's liability. On these facts a $1,000.00 verdict was set aside and a new trial granted on the sole issue of damages.

The same result occurred in *Delong v. Albert*, 157 W. Va. 874, 205 S.E.2d 683 (1974). The trial court properly directed a verdict in favor of the plaintiff on liability. Plaintiff's pecuniary loss in the amount of $2,810.99 was not contested, and the record disclosed evidence of pain and suffering. On these facts the inadequacy of the jury's $1,100.00 award was apparent.

jury were confused about the proper measure of damages or whether they were confused about the proper rules for determining liability, or both. These cases represent an extreme example of the compromise verdict which in its less oppressive form has historically been rejected in theory by all appellate courts, yet accepted in practice by almost every bar and bench.

Appellate courts are not so naive as to believe that juries can operate like law professors and segregate the circumstances of liability and the degree of moral fault which those circumstances imply from the proper measure of damages for the victims.[2] A jury award for pain and suffering is an inherently subjective undertaking, and the degree of moral fault which a jury imputes to the tortfeasor is almost inevitably reflected in the liberality or parsimony of the pain and suffering award. Nevertheless, subjective though pain and suffering awards may be, the jury must give some reasonable compensation for pain and suffering to victims when such pain and suffering have been demonstrated, and an award which is so unreasonable that its adequacy cannot be debated by fair-minded men must be set aside. Where, however, liability is contested and an appellate court is unable to infer whether upon a new trial a jury would find in favor of the defendant or in favor of the plaintiff

---

[2] Harry Kalven, Jr., Professor of Law and Director of The Jury Project at the University of Chicago Law School, has solid empirical evidence indicating that juries do take moral culpability into account when setting damages, despite clear legal instructions forbidding such consideration. *See*, Kalven, *The Jury and the Damage Award*, 19 *Ohio St. L. J.*, 158 (1958). And on his view the jury's apparent misconduct is not alarming:

"If one is tempted to read reasons into institutional arrangements, as I confess I am, one suspects that the law recognizes that the computing of damages involves a complex value judgment as well as a literal determination of fact. And that with damages as with negligence itself the law intends the jury to legislate interstitially, to fill out the vague general formula. On this view the jury's freedom and discretion is not by default but by preference—preference for the community sense of value as the standard by which to price the personal injury." *Id.* at 161.

an appellate court must remand the case for a trial on all issues.

The recent West Virginia case of *King v. Bittinger*, ____ W. Va. ____, 231 S.E.2d 239 (1976) falls into this category. In *King* the jury verdict was for the exact amount of plaintiff's[3] medical expenses, and included nothing for proven loss of wages, pain or suffering. While damages were thus determined to be inadequate, the issue of liability was sufficiently in doubt, primarily on the basis of a contributory negligence allegation, to require a remand on all issues.

Type 2 cases, of which *King* and the case at bar are examples, are unlikely to be appealed very often, because the appealing plaintiff faces risks frequently disproportionate to possible gain. If he succeeds in having the jury verdict overturned, the plaintiff is faced with the prospect of a new trial, at which a verdict for the defendant could easily be returned, in view of the disputed liability. Should there be such a verdict, the plaintiff loses his earlier, inadequate award together with the nontaxable expenses of appeal and costs of a new trial, and runs the further risk that the appeals court will classify his case as a type 3, defendant's verdict perversely expressed (discussed below). In that event the upholding of his inadequate award may provide the plaintiff only small consolation when he considers the costs of his appeal.

## TYPE 3:

The third and fourth types of cases have not heretofore been recognized for exactly what they are, although this Court has treated the recurrent fact patterns of these distinct types in a consistent manner. The third and fourth types are almost mirror images of one another and the results in the reported cases have been logical and consistent.

---

[3] Reference is here made to plaintiff Clarence King, not to his co-plaintiff and wife, Lillian, the judgment against whom was reversed as being contrary to the law and the evidence.

The third type of case is the defendant's verdict perversely expressed and involves a factual situation in which liability is either tenuous or at least strongly contested by the defendant and the award of damages is so inadequate as to be nominal under the evidence in the case. Usually these cases do not provide a situation in which the defendant would have been entitled to a directed verdict on liability as a matter of law; nonetheless, because the plaintiff's evidence of liability is so questionable and the damage award so nominal, an appellate court may reasonably infer that even though the jury were sympathetic toward the plaintiff, they could award him only a nominal sum as an act of mercy, and if interrogated in depth would have admitted that they did not really believe the defendant to be liable.

The legitimacy of sustaining a jury award for a grossly inadequate sum under the doctrine of the defendant's verdict perversely expressed is hotly debated even by members of this Court; yet, experience may have triumphed over pure logic and this Court as previously constituted may wisely have recognized that the object of the law is conflict resolution and not conflict perpetuation. In this philosophical context, to sustain the jury finding is not a usurpation of the function of the jury by an appellate court, but rather the drawing of legitimate conclusions

In a type 2 case liability is also hotly contested, but there the award of damages, while inadequate, is by no means nominal. A type 2 case is distinguished from a type 3 case or defendant's verdict perversely expressed by the fact that an appellate court cannot determine whether the inadequacy of the verdict were a function of a misunderstanding about the law of liability or the law of damages. Conversely a type 3 case or defendant's verdict perversely expressed is identified by the nominal award of damages which permits an appellate court reasonably to infer that the error was made on liability rather than on damages. Litigants will continue to argue about what the term "nominal award under the

facts of the case" means, yet if we could define it more precisely, the job of judges could be done by computers.

In any case in which a court can be convinced from the jury award and all the evidence that the jury found no liability, it is entitled to accept a nominal award as a defendant's verdict perversely expressed, in frank recognition that juries are human, untrained in the discipline of the law which separates emotions from reason. Illustrating the operation of the rule on defendants' verdicts perversely expressed are the following cases: *Shields v. Church Brothers, Inc.*, 156 W. Va. 312, 193 S.E.2d 151 (1972) and *Haffner v. Cross*, 116 W. Va. 562, 182 S.E. 573 (1935).

TYPE 4:

The mirror image of the type 3 case is the fourth type of case in which, while the plaintiff would not be entitled to a directed verdict on the matter of liability, the issue of liability has been so conclusively proven that an appellate court may infer that the jury's confusion was with regard to the measure of damages and not to liability. In this type of case an appellate court can feel justified in remanding the case for a new trial on the issue of damages alone because it would be unfair to put the plaintiff to the expense and aggravation of proving liability once again when he has been denied a proper and just verdict by the caprice and incompetance of a particular jury.

With regard to this type of case, it is worthwhile to reiterate that the object of the litigation process is conflict resolution rather than conflict perpetuation. Everyone is entitled to his day in court and to due process of law; however, he is not entitled to work rank injustice upon others by taking advantage of the vagaries of the process. *See*, in another context, *Roe v. M&R Pipeliners, Inc.* 157 W. Va. 611, 202 S.E.2d 816 (1974). Where liability has been proven once, and where a jury has found liability but not found adequate damages, the plaintiff is placed at a severe disadvantage and the defendant, if the case is remanded for a new trial on all issues, enjoys

a pure windfall. The following cases fit into type 4: *Keiffer v. Queen,* 155 W. Va. 868, 189 S.E.2d 842 (1972); *Biddle v. Haddix,* 154 W. Va. 748, 179 S.E.2d 215 (1971); *England v. Shufflebarger,* 152 W. Va. 662, 166 S.E.2d 126 (1969); *Richmond v. Campbell,* 148 W. Va. 595, 136 S.E.2d 877 (1964).

## II.

The common thread which connects these four types of jury awards is a sum which is so low under the facts of the case that reasonable men cannot differ about its inadequacy. Whenever a jury is called upon to compensate a litigant for pain, suffering, inconvenience, humiliation, or a host of other intangibles, it has long been accepted in practice, if not in the theory of jury instructions, that the jury takes in consideration relative degrees of fault in awarding compensation. If we really wished to have juries decide the question of damages without regard to gradations of fault, then we would bifurcate the trial process and have separate juries pass on each issue.

How then do we explain that we gladly accept in practice what we vehemently reject in theory? The answer must be that we seek to achieve a system which does justice, and the current system appears to approximate it more perfectly than any other we can envisage within our tradition of jurisprudence. All verdicts involving subjective awards for personal injuries are necessarily compromised. Unless we are to choose some process other than the "black box" of a jury, then the best an appellate court can do is establish the perimeters within which the jury process has full latitude to generate justice. The four types of inadequate award establish some of those perimeters.[4]

"A good deal of the wisdom of life is apt to appear foolishness to a narrow logic. We urge our horse down

---

[4] We have established similar perimeters for excessive damage awards, *see Addair v. Majestic Petroleum Co.,* ___ W. Va. ___, ___ S.E.2d ___ (1977).

hill and yet put the brake on the wheel—clearly a contradictory process to a logic too proud to learn from experience. But a genuinely scientific logic would see in this humble illustration a symbol of that measured straining in opposite directions which is the essence of that homely wisdom which makes life livable." Cohen, *The Place of Logic in the Law*, 29 *Harv. L. Rev.*, 622 at 639 (1916).

Accordingly the judgment of the Circuit Court of Hancock County is reversed and the case is remanded for a new trial on all issues.

*Reversed and remanded for a new trial on all issues.*