404 S.E.2d 534

**John FULLMER, M.D. and Marlene Fullmer**

**v.**

**SWIFT ENERGY CO., INC.**

**No. 19630.**

Supreme Court of Appeals of West Virginia.

April 22, 1991.

Mark Gaydos, Wilson, Frame & Metheney, Morgantown, for John Fullmer, M.D. and Marlene Fullmer.

J. Cecil Jarvis, McNeer, Highland & McMunn, Clarksburg, for Swift Energy Co., Inc.

NEELY, Justice:

This is an appeal from the Circuit Court of Taylor County's denial of plaintiffs' motion for a new trial on the issue of damages. The plaintiffs, John Fullmer, M.D. and Marlene Fullmer sued Swift Energy Co., Inc., essentially for damages arising from 1) the laying by Swift of a gas pipeline across the Fullmer's land,[1] and 2) the pollution with mud and sediment of a trout stream running through the Fullmer's land.[2]

The Fullmers' complaint, filed on 12 January 1987, alleged that Swifts actions "temporarily and permanently damaged and reduced the market and use value of the plaintiffs' real property, and caused the plaintiffs severe inconvenience, annoyance, anger, and emotional distress and loss of and damage to the beneficial enjoyment of their property." In their prayer for relief, plaintiffs sought "$25,000.00 compensatory damages, $25,000.00 punitive damages, their costs, attorney's fees, and a temporary and permanent injunction requiring the defendant to remove the pipeline, or take such other corrective action as is necessary and for such other relief as the court finds just."

A trial ensued, at the end of which the jury returned a verdict for $2,500, an amount the Fullmers feel to be inadequate. The verdict was given in the form of a special verdict. Regarding the pollution of the stream, the jury found that Swift unreasonably polluted the stream where it flowed through the Fullmers' property, but that the Fullmers suffered no actual damages from the pollution. As for the pipeline, the jury found that Swift acted unreasonably or unnecessarily in locating its pipeline on the Fullmers' property, but that the Fullmers suffered no actual damages. As for punitive damages, the jury answered "yes" to the question, "... did Swift act in intentional, grossly negligent, wanton or

---

1. Swift had an oil and gas lease of the mineral rights on a 600 acre tract that included the Fullmers' 70 acres, so Swift had a legal right to lay a pipeline across the Fullmers' property and drill wells. The Fullmers claim that Swift laid the pipeline in an unreasonable manner, and without consulting them about the pipeline's location.

2. The Fullmers's complaint is more detailed, but boils down to a complaint about the pipeline and the mud.

reckless disregard of the Fullmers' rights," and awarded $2,500 in punitive damages.[3]

The Fullmers claim that the jury's verdict was inadequate because 1) the trial court's order *in limine* regarding the statute of limitations kept the jury from considering evidence of pollution that occurred more than two years before plaintiffs filed suit, and 2) the jury ignored the evidence of the Fullmers' annoyance and inconvenience.

## I.

■ Swift admits that there were three incidents of pollution of Laurel Run from their drilling of wells, and views these incidents as three separate occurrences. The first involved mud coming down from their Cadwalader No. 2 well on 21 December 1984. The second resulted from a pit breach on Cadwalader No. 3 on 26 February 1985. The third resulted from a failure to maintain sediment barriers in May of 1985.

Swift filed a motion *in limine* to exclude evidence of the 21 December 1984 pollution, because it occurred more than 2 years before the filing of the Fullmers' action on 12 January 1987. The trial court granted Swift's motion *in limine*. The Fullmers claim that the trial court erred in ruling that evidence of the 21 December 1984 incident was barred by the two year statute of limitations. They claim that the incidents of pollution represent a series of continuing tortious acts by Swift, rather than separate incidents of pollution, and cite *Handley v. Town of Shinnston*, 169 W.Va. 617, 289 S.E.2d 201 (1982).

The *Shinnston* case involved one persistently leaky waterline which continuously damaged plaintiff homeowners' land over a period of six years. The plaintiffs purchased their home in 1971, and in 1972 noticed that the waterline was leaking, and notified the town of the leak. In 1976, the waterline burst, causing a crack in plaintiffs' yard. The town was notified again and repaired the crack. Nevertheless, the line continued to leak until 1978, when it was removed. After the waterline was removed, the crack in plaintiffs' yard reappeared and continued to expand and slip, until finally a large crater formed in the yard and the foundation of the house shifted. In 1979, less than two years after removal of the leaky waterline, plaintiffs filed suit against the town for damage from the waterline. The town filed a motion for summary judgment on the grounds that the cause of action accrued over two years before plaintiffs filed suit, and was barred by the statute of limitations. The trial court granted the town summary judgment. We reversed, and held that the tortious act did not end until the leaky waterline was removed in 1978, less than two years before institution of suit by plaintiffs. We said:

> In this case it is clear that the damage did not occur all at once but increased as time progressed; each injury being a new wrong. "[W]here a tort involves a continuing or repeated injury, the cause of action accrues at, and limitations begin to run from the date of the last injury, or when the tortious overt acts cease." [Citations omitted.]

*Id.*, 169 W.Va. at 619, 289 S.E.2d at 202.

In *Shinnston*, there was one continuing tortious injury that, in fact, worsened over time, whereas the record here shows three separate occurrences at three different sites. If the pollution had resulted from continuous, or at least continual, problems with one particular well or pipeline belonging to Swift, then perhaps we would have a "continuing injury" case, and evidence dating back to the beginning of the continuing

---

3. Because the award of punitive damages without compensatory damages was not assigned as error by appellee, we need not discuss the propriety of the award. Plaintiffs use the award of punitive damages without compensatory damages as evidence that the jury was confused, and plaintiffs implied that if the jury had taken into account plaintiffs' annoyance and inconvenience, the jury would have found actual damages.

We find plaintiffs' argument logically fallacious. It is equally likely that the jury's award shows confusion about the function of punitive damages, and that plaintiff should not have been awarded anything.

injury would be freely admissible. However, such are not the facts before us.[4]

## II.

The Fullmers claim that the jury award was inadequate because the jury ignored evidence of annoyance and inconvenience. Apparently, the plaintiffs recognize that reasonable men and women could find that there was no permanent damage done to the plaintiffs' land. The record showed that time had corrected the ill effects of mud in the trout stream. The record also gave the jury reason to believe that Swift's small gas pipeline did not permanently and unduly burden the Fullmers' surface estate. Thus, annoyance and inconvenience damages took on an increased importance in the Fullmers' case. Although we believe that the jury could properly have awarded the Fullmers some damages for annoyance and inconvenience, the facts do not demand such an award. In *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977), we discussed in some detail the question of inadequate jury verdicts. A common thread among the four types of inadequate jury awards that we discussed was, "a sum which is so low under the facts of the case that reasonable men cannot differ about its inadequacy." *Id.*, 160 W.Va. at 165, 233 S.E.2d at 317. We are certain that reasonable men and women could differ on the adequacy of the verdict awarded to the Fullmers. The fact that the $2,500 was awarded in the form of punitive damages is a technical flaw that was not specifically cross-assigned as error by the appellee.

For the reasons given above, we affirm the judgment of the Circuit Court of Taylor County.

Affirmed.

---

**4.** Moreover, we are far from certain that the evidence of the 21 December 1984 incident of pollution would have significantly changed the jury's estimation of plaintiffs' damages.