420 S.E.2d 275

**Loretta L. GEBHARDT, Plaintiff Below, Appellant,**

v.

**Elfriede I. SMITH, Defendant Below, Appellee.**

No. 20099.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1992.

Decided June 1, 1992.

**516**

William I. Flesher, Flesher & Flesher, Huntington, for appellant.

Mark L. Garren, Garren & Plymale, Huntington, for appellee.

PER CURIAM.

The appellant, Loretta L. Gebhardt, is aggrieved by a jury award for damages sustained when the appellee, Elfriede I. Smith, drove her car into the car in which the appellant was a passenger. The appellant contends that the itemized jury award of $12,392.35 for medical expenses and lost wages was insufficient as a matter of law because, although liability was conclusively determined to rest with appellee, the jury made no provision in its verdict for either pain and suffering or loss of enjoyment of life suffered by appellant. We agree with appellant's argument and reverse the order of the Circuit Court of Cabell County entered March 15, 1989 and remand this case for a new trial on the issue of damages.

The evidence disclosed that on November 7, 1985, between 4:30 p.m. and 4:45 p.m., the appellant and her daughter, Karen Gebhardt, were passengers in a car driven by appellant's son, Myron Gebhardt, in an easterly direction on Fifth Avenue in Huntington. The appellant was in the front passenger seat while Karen Gebhardt was in the back seat. Elfriede Smith was alone in her car, proceeding in a southerly direction along Twelfth Street. The intersection of Fifth Avenue and Twelfth Street contains a stop sign for traffic moving south on Twelfth Street, but no signs or traffic lights for traffic proceeding east on Fifth Avenue. Mrs. Smith pulled out from the stop sign and was immediately struck by the car driven by Myron Gebhardt. The weather was cloudy, and it was dusk.

The car in which the appellant was a passenger suffered a total loss due to the accident. The appellant was trapped on the floor of the car as a result of the accident and suffered a fractured tibia and fibula. The appellant testified that she was in pain at the time of the accident. Myron Gebhardt, Karen Gebhardt, and an independent witness to the accident, Deborah Ney, all testified that appellant appeared to be in pain.[1] Appellant was removed to a local hospital by ambulance.

Appellant was placed in a hip to foot cast for three weeks. For the first week she was mostly confined to a bed in the hospital. She attempted physical therapy but suffered pain and regurgitation as a result.

---

1. The uncontradicted testimony showed that appellant was moaning and making facial grimaces.

Appellant testified she was sore and hurt all over during this time period. After being transported by ambulance to her home, she remained bedridden for two more weeks. During those two weeks the appellant required frequent attention and care by her family members to help her bathe, prepare meals, and use the toilet. She testified she was "miserable" all three weeks in the long cast and had difficulty sleeping.

After three weeks, the hip to ankle cast was removed and a knee to mid-foot cast was put in its place and remained for over four months. During those four months appellant could not move well and found the use of crutches painful. After the short cast was removed, appellant still used crutches and a cane until she was able to walk without aid. The short cast was removed in early April, 1986, and appellant progressed to the point where she could walk up one flight of stairs without assistance by June of 1986.

The medical evidence in this case shows that appellant's injury, although relatively well-healed, is permanent in nature. Appellant's treating orthopedic physician, Dr. Imre Szendi–Horvath testified that when he last saw appellant in 1988 one of appellant's legs was slightly shorter than the other due to the accident. Furthermore, because of the shortness, appellant suffered "weight deformity" and bowing which caused "minimal leg discrepancy" of a permanent nature. Dr. Szendi testified that appellant had made an excellent recovery and that the shortening of her leg was not significant. Nonetheless, Dr. Szendi was of the opinion that appellant's leg would never again be perfect, and that she could have problems with pain and swelling in the future. Appellant testified that she did, in fact, still have periodic swelling in her leg.

The deposition testimony of orthopedic surgeon Dr. Tony Scott was also offered to the jury. Dr. Scott examined the appellant on one occasion, on July 24, 1986. At that time appellant had stiffness and swelling of her ankle. Dr. Scott found that appellant

could have returned to her job on that date and that her recovery was complete. Nonetheless, he found that she suffered from a permanent shortness of the right leg to the extent of one-half inch and had a wasting of the right calf of three-fourths of an inch due to prolonged casting. Dr. Scott also believed that appellant would suffer permanent restriction of movement of her right ankle due to the injuries she sustained in the accident.

Appellant was released by Dr. Szendi to return to "light-duty" work on April 22, 1986. Appellant is employed as a "parts clerk" for the city of Huntington. Her job required her to lift items as heavy as car batteries, and also required much stooping and bending, and that she climb ladders. Appellant testified that her employers would not let her return to work until she was released by her physician for "full duty," despite her request to return. Appellant was released by Dr. Szendi to return to "full duty" on August 29, 1986, and she returned to work shortly thereafter.

Appellant testified that even after returning to work she had difficulties with her leg. She testified that she still takes prescription drugs to combat pain. She testified that she cannot drive for extended periods of time nor can she play badminton, a sport she previously enjoyed. However, she also testified that she frequently walked four miles at a time before the accident, and by the summer of 1988 she was once again able to walk that distance. She further testified that her life was "pretty much back to normal," by February, 1989, the time of the trial.

At the trial it was stipulated by the parties that the appellant incurred medical expenses of $4,454.35, due to the accident. The jury was presented an itemized verdict form and awarded the stipulated amount for "medical bills."

The jury also awarded the appellant $7,938.00 in "lost wages" due to the accident. This amount equals only 27 weeks of her work.[2] The verdict form provided by

---

2. It was stipulated by the parties that appellant

worked a forty-hour week at the pay rate of

the trial court to the jury contained the following itemized categories: (1) "pain and suffering experienced to date, if any:"; (2) "pain and suffering to be experienced in the future, if any"; and (3) "loss of enjoyment of life, including the inability to engage in normal pursuits and activities and permanent disability and disfigurement." The jury made no award in those three categories.[3]

The appellant thereafter made a motion for a new trial on the issue of damages. The Circuit Court of Cabell County gave the appellee the option of paying an additur to the amount of lost wages or, in the alternative, to retry the case, including the issue of liability.[4] The appellee agreed to pay the additur. Therefore, the circuit court denied the motion for a new trial on damages.

The appellant maintains that the jury verdict was inadequate because no award was made for pain and suffering or lost enjoyment of life, as well as initially inadequate in the amount of lost wages awarded. The appellee has never admitted liability in this case. It is from the Circuit Court of Cabell County's denial of a new trial on the issue of damages that appellant appeals to this Court.

■ The appellant assigns several errors as grounds for reversal of the trial court's order, but the lone error of merit is the contention that the damages awarded by

the jury were inadequate as a matter of law.[5] Appellant contends that despite a preponderance of uncontradicted evidence to the contrary, "the jury failed to consider any sum for pain and suffering, the degree and permanency of her injuries, any impairment, mental anguish or deformity." Appellant further contends that any retrial should be limited to the issue of damages because, "appellee put on absolutely no credible evidence which would relieve her of liability or which would create an intervening cause," and that the jury, by its verdict, clearly rejected any "intervening cause" theory.

The appellee contends that the damages awarded were not inadequate in light of the evidence presented. In the event that this Court finds sufficient evidence to support appellant's contentions, appellee alternatively asserts that the jury verdict was a "defense verdict perversely expressed." Furthermore, appellee contends that if this Court finds sufficient evidence to set aside the jury verdict, then any retrial should not be limited to the issue of damages and should include retrial on the issue of liability as well.

■ In syllabus point 1 of *Maynard v. Napier*, 180 W.Va. 591, 378 S.E.2d 456 (1989), we noted the standard by which an appeal from an allegedly inadequate jury award is to be judged: " 'In an appeal from an allegedly inadequate damage award, the

---

$7.34 per hour. The amount awarded by the jury equals slightly more than 135 days worth of wages. Appellant testified she lost 203 days of work due to the injury.

**3.** The verdict form also itemized "medical bills incurred to date" (the jury found such damages equal to $4,454.35) and "lost damages to date, if any" (the jury found lost wages of $7,938.00). It is not clear from the record why the jury was requested to itemize the general verdict in the manner set forth in the text of the opinion. Such specificity in a personal injury case such as this appears to be of limited value. It may, in some cases, cause error by focusing on the itemized categories and the potential inconsistencies contained therein (i.e., a jury could be presented evidence of substantial pain and suffering in the past and of only a limited likelihood of pain and suffering in the future, and nonetheless grant more damages for future pain and suffering). The potential for error by item-

izations such as this in such a personal injury case is greater than in verdicts of a more general nature.

**4.** The trial court gave appellee this option in an order entered on December 13, 1989. The optional additur was in the amount of $5,831.84.

**5.** Appellant also contends that the trial court erred in denying admittance into evidence two photographs of appellant: one showing appellant before and the other representing her after the accident. The record reveals that the appellant was permitted to display her injured leg to the jury. The trial court stated, in regard to the earlier photograph: "Doesn't look like you can see much of her leg in that picture. That picture doesn't look very pertinent." Because appellant displayed her leg to the jury, the later photograph was unnecessary and cumulative. The earlier photograph is not pertinent for the reason stated by the trial court.

evidence concerning damages is to be viewed most strongly in favor of the defendant.' Syllabus Point 1, *Kaiser v. Hensley,* [173] W.Va. [548], 318 S.E.2d 598 (1983)."

■ In syllabus point 2 of *Maynard v. Napier, supra,* we stated:

' "Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. *Hall v. Groves,* 151 W.Va. 449, 153 S.E.2d 165 (1967)." *King v. Bittinger,* 160 W.Va. 129, 231 S.E.2d 239, 243 (1976).' Syllabus Point 1, *Kaiser v. Hensley,* [173] W.Va. [548], 318 S.E.2d 598 (1983).

■ Even when viewed most strongly in favor of the defendant appellee, the damages awarded by the jury in the instant case were inadequate. The appellant presented overwhelming evidence of past pain and suffering. She was clearly in substantial pain at the time of the accident. She suffered a double fracture in her lower leg, was bedridden for three weeks and casted for a total of five months. Following the five months of casting, she gradually improved, although she continued to suffer stiffness and swelling. The fact that, as her treating physician testified, the appellant had made an "excellent recovery," in no way diminishes the overwhelming and uncontradicted evidence of her past pain and suffering.

Furthermore, the only two physicians to testify at the trial both noted that the appellant's injury, to some degree, will be permanent.[6] Although neither physician believed the permanency of the injuries to be "significant," the jury was instructed to make an award for the permanency, if any, of the injury, and for pain and suffering, in the event that the jury found appellee negligent. The jury found the appellee negligent and failed to make such an award despite overwhelming uncontradicted evidence to the contrary. Therefore, even when the evidence is viewed in a light most favorable to the defendant appellee, the damages awarded were inadequate.

■ In syllabus point 4 of *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964), we stated:

Rule 59(a), R.C.P., provides that a new trial may be granted to any of the parties on all or part of the issues, and in a case where the question of liability has been resolved in favor of the plaintiff leaving only the issue of damages, the verdict of the jury may be set aside and a new trial granted on the single issue of damages.

■ It is the opinion of this Court that in finding for the appellant and against the appellee, the jury has found the appellee guilty of negligence and rejected the "intervening cause" theory presented by appellee.[7] Appellee argues that the jury could have found for the appellee on the issue of liability. Although it is conceivable that such a result could have occurred, we believe that liability was more than conclusively proven. Appellee's argument that there was evidence that the driver of the car in which the appellant was a passenger created an independent intervening

---

6. Dr. Szendi testified, "This leg will never be perfect. Sometime she could have some kind of problem with it, pain, sometimes possible swelling." Dr. Scott testified that the shortening of claimant's right leg due to the accident was a permanent condition, as was the restriction and limitation of motion in appellant's right ankle.

7. The jury was given the following written instructions:

You are to be guided by the following instructions in filling out the form of verdict to the Court in this case.

1. If you believe from a preponderance of the evidence that (a) Myron Gebhardt was negligent; (b) that Myron Gebhardt's negligence was an intervening cause; (c) that the intervening negligence of Myron Gebhardt was the sole proximate cause of the injuries sustained by Loretta Gebhardt, then your foreperson will complete and sign Verdict Form No. 1.

2. If you believe from a preponderance of the evidence that (a) Myron Gebhardt was not negligent, or (b) that Myron Gebhardt's negligence, if any, was not the sole proximate cause of the injuries sustained by Loretta Gebhardt, then your foreperson will complete and sign Verdict Forms No. 2.

The foreperson signed verdict form no. 2.

cause of the accident is wholly unsubstantiated by the record.[8]

Under the typology outlined in *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977),[9] this case would fall into either "Type 1" or "Type 4." In both categories the plaintiff is entitled to a new trial limited solely to the issue of damages. In "Type 1" cases the plaintiff is entitled to a directed verdict on the issue of liability. In the instant case, the trial court refused a directed verdict on liability when viewing the evidence most strongly for the defendant appellee. In "Type 4" cases:

> [W]hile the plaintiff would not be entitled to a directed verdict on the matter of liability, the issue of liability has been so conclusively proven that an appellate court may infer that the jury's confusion was with regard to the measure of damages and not to liability. In this type of case an appellate court can feel justified in remanding the case for a new trial on the issue of damages alone because it would be unfair to put the plaintiff to the expense and aggravation of proving liability once again when he has been denied a proper and just verdict by the

caprice and incompetence of a particular jury.

160 W.Va. at 164, 233 S.E.2d at 317. Even if the appellant was correctly denied a directed verdict on liability prior to trial, liability was so conclusively proven at trial that the instant case would easily fall into the category of "Type 4." In either event, appellant is entitled to a new trial solely on the issue of damages.

■ In *Freshwater*, we noted several archetypal "Type IV" cases. 160 W.Va. at 165, 233 S.E.2d at 317. Among these cases is *Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971). In syllabus point 3 of *Biddle*, we stated:

> In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

In this civil action for personal injuries, the jury returned a verdict manifestly inadequate in amount and wholly unsupported by the evidence.

---

8. Although there was evidence that the weather the day of the accident was overcast, and the time of day was "dusk," there was absolutely no evidence that a lack of lighted headlamps by the driver of appellant's car played any part in the accident. There was no testimony by any party that showed lighted headlamps were necessary at the time of the accident and in fact the appellee herself testified that she did not believe she was using her headlamps when the collision occurred. Further, appellee testified that she did not see the car appellant was riding in because her view of Fifth Avenue was obstructed by a utility pole and a tree. The investigating police officer filed a "traffic accident report" which included sections entitled "contributing circumstances" to the accident: The officer noted "no improper driving" on the part of appellant's driver, but noted that appellee "did not have the right of way." The deposition testimony of the only independent witness, Deborah Ney, described the lighting as "an overcast type day, but as far as it being very dark, no, nor was it very bright." Even viewed in a light most favorable to appellee, there is no evidence of any intervening negligence on the part of appellant's driver, let alone negligence to such an extent as to constitute the sole proximate cause of the accident.

9. In *Freshwater* we developed "a typology of inadequate judgments" in order to approach such cases from a principled and reasoned analytic framework, rather than approach the variety of case law involving inadequate judgments as an indecipherable morass. Simply stated, "Type I" cases are those "where the plaintiff would have been entitled to a directed verdict on liability as a matter of law, and the damages are inadequate even when viewed most strongly in favor of the defendant." 160 W.Va. at 160, 233 S.E.2d at 315.

"Type II" cases are those "where liability is strongly contested and the award of damages is clearly inadequate if liability were proven." 160 W.Va. at 160, 233 S.E.2d at 315.

A "Type III" case "is the defendant's verdict perversely expressed and involves a factual situation in which liability is either tenuous or at least strongly contested by the defendant and the award of damages is so inadequate as to be nominal under the evidence in the case." 160 W.Va. at 163, 233 S.E.2d at 316.

"Type IV" cases are described in the body of this opinion.

Based upon the foregoing, the order of the Circuit Court of Cabell County overruling appellant's motion for a new trial is reversed, and appellant is awarded a new trial on the sole issue of damages.

Affirmed, in part, Reversed, in part; remanded, with directions.