433 S.E.2d 281

Ellen Roxanna **LINVILLE**, Administratrix of the Estate of Jack K. Linville, Plaintiff Below, Appellant,

v.

John W. **MOSS** III, and Guest Trucking Company, Inc., Defendants Below, Appellees.

No. 21263.

Supreme Court of Appeals
of West Virginia.

Submitted Jan. 19, 1993.

Decided July 22, 1993.

J. Timothy DiPiero, Franklin S. Fragale, Jr., Lonnie C. Simmons, DiTrapano & Jackson, Charleston, for appellant.

Charles E. Pettry, Jr., Goodwin & Pettry, Charleston, for appellee John Moss III.

Daniel R. Schuda, Steptoe & Johnson, Charleston, for appellee Guest Trucking Co., Inc.

WORKMAN, Chief Justice:

This is an appeal by Ellen Roxanna Linville, as administratrix of the estate of her deceased husband Jack K. Linville, from a November 5, 1991, order of the Circuit Court of Kanawha County denying the Appellant's motion to set aside the jury verdict and award a new trial on all issues, or, in the alternative, on the issue of damages. We affirm the decision of the jury regarding the allocation of fault, but we reverse and remand for a new trial on the issue of damages.

## I.

On September 5, 1988, at approximately 8:00 p.m., Michael Brown, a truck driver for Appellee Guest Trucking Company, Inc., parked his tractor trailer on the berm of Route 60 in Hurricane, West Virginia, across the road from Kim's Quik Mart. After making inquiries in the store concerning directions to his destination, Mr. Brown attempted to make a U-turn by pulling the tractor trailer into Kim's Quik Mart. As Mr. Brown maneuvered his truck into the parking lot, Jack Linville exited Kim's Quik Mart and offered his assistance. According to testimony at trial, Mr. Linville stood on the driver's side of the truck, determined that there was no traffic coming, and motioned for Mr. Brown to back out onto Route 60. Mr. Linville was allegedly standing near the center line when Appellee John W. Moss, driving his vehicle west on Route 60, struck and fatally injured Mr. Linville.

Mr. Moss testified that he had consumed a "couple of beers" earlier in the day, and

John Wageman, a Putnam County EMT Firefighter, testified that he noticed an odor of alcohol on Mr. Moss. Mr. Moss, contrary to the testimony of other witnesses to the accident, asserted that Mr. Linville was three to four feet over the center line and in the path of Mr. Moss' vehicle at the time of impact. Mr. Moss also testified that he had swerved to miss Mr. Linville but was unable to avoid the collision. Members of the Putnam County Sheriff's Department, however, testified that they discovered no evidence indicating any evasive action taken by Mr. Moss.

With regard to normal truck safety practices, Mr. Gary Huey testified that Mr. Brown should not have attempted to back onto the highway. Moreover, Mr. Huey explained that Mr. Brown had a duty to seek out information regarding a safe turning area and to avoid making a U-turn or backing out onto Route 60.

With regard to damages, the Appellant testified that Mr. Linville, age forty-one at the time of his death, had been unemployed and had assumed most of the responsibilities of the household and the care of his and his wife's son, Teddy, twelve years of age at the time of the accident. The Appellant testified to $3,719 in funeral expenses and presented the testimony of professor of economics Donald R. Adams, Jr., regarding the replacement loss of Mr. Linville's household services. Mr. Adams explained that the value of replacement services was $367,692, or $240,180 after reduction to present value. Mr. Adams also explained that Mr. Linville was incapable of sustaining gainful employment due to his learning disability and his fifth grade education.

The jury returned a verdict of $4,000 for reasonable funeral expenses, assessing forty-nine percent negligence to Mr. Linville, twenty-six percent negligence to Mr. Moss as the driver of the car, and twenty-five percent negligence to Guest Trucking Company.[1] The jury awarded nothing to decedent's wife and son for loss of services, sorrow, mental anguish, or companionship.

---

1. John Moss had settled prior to trial for $100,-000. Mr. Moss remained in the case at trial because an additional amount of insurance was potentially available. This settlement was not disclosed to the jury.

Subsequent to trial, the Appellant moved to set aside the verdict and to award a new trial on all issues or simply on the issue of damages. The lower court denied that motion, holding that under *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977), the jury's verdict was a defendant's verdict perversely expressed and therefore should be affirmed.

## II.

Under the *Freshwater* framework for analysis of inadequate jury awards of damages, it must first be determined whether a verdict is indeed inadequate. Then it must be determined whether a new trial should be granted on liability and/or damages or whether the verdict should be upheld as a defendant's verdict perversely expressed.

The lower court classified this case as a type 3 *Freshwater* case. To have satisfied the definition of a type 3 case pursuant to the *Freshwater* analysis, damages must have been "so inadequate as to be nominal under the evidence in the case." 160 W.Va. at 163, 233 S.E.2d at 316. By classifying this verdict as a type 3 case, therefore, the lower court implicitly held that the award of damages was inadequate.

■ We agree with the lower court's apparent conclusion regarding the inadequacy of the damages. In syllabus point 2 of *Fullmer v. Swift Energy Co.*, 185 W.Va. 45, 404 S.E.2d 534 (1991), we set forth the general standard for assessing the adequacy of an award. "We will not find a jury verdict to be inadequate unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy." *Id.* at 46, 404 S.E.2d at 535. In the present case, the jury awarded only $4,000 for funeral expenses. It awarded nothing for mental anguish, nothing for sorrow or loss of companionship to either the decedent's wife or son, and nothing for the loss of services which were valued by the Appellant's expert to be in excess of $200,000.[2]

■ In syllabus point 1 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), we explained that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." *Accord*, Syl. Pt. 6, *Dowey v. Bonnell*, 181 W.Va. 101, 380 S.E.2d 453 (1989); Syl. Pt. 1, *Maynard v. Napier*, 180 W.Va. 591, 378 S.E.2d 456 (1989). Even when so viewed, the evidence in this matter still establishes that the decedent had made significant contributions to his family's household responsibilities. Mr. Linville's immediate family consisted of his wife and son Teddy, twelve years of age at the time of his father's death. The Appellant testified extensively about the close relationship between Mr. Linville and Teddy. Although Mr. Linville was not employed outside the home, Mr. Adams, as the Appellant's economic expert, testified that the replacement loss of Mr. Linville's household services was $367,692, or $240,180 after reduction to present value. Despite this testimony, the jury awarded no damages for mental anguish, sorrow and loss of companionship, or loss of services. The Appellant was awarded only $4,000 in funeral expenses.

The Appellees contend that the $4,000 award was adequate in view of the testimony from the Appellant which indicated that prior to her husband's death, he had spent a significant portion of many days at Kim's Quik Mart. The Appellees believe that such testimony, despite other testimony re-

---

**2.** The jury verdict form required the jury to determine compensatory damages separately for the Appellant and Teddy Linville. To the Appellant for "sorrow, mental anguish, and solace which may include but is not necessarily limited to loss of society, companionship, comfort, guidance, kindly offices and advice of the decedent, Jack K. Linville[,]" the jury awarded $0. To the Appellant "for the reasonably expected loss of services, protection, care and assistance provided by Jack K. Linville[,]" the jury awarded $0. To the Appellant "for reasonable funeral expenses[,]" the jury awarded $4,000.

To Teddy Linville for "sorrow, mental anguish, and solace which may include but is not necessarily limited to loss of society, companionship, comfort, guidance, kindly offices and advice of the decedent Jack K. Linville[,]" the jury awarded $0. To Teddy Linville "for the reasonably expected loss of services, protection, care and assistance provided by Jack K. Linville[,]" the jury awarded $0.

garding the decedent's activities of cleaning, preparing meals, and caring for Teddy, justifies the jury's conclusion of no economic loss for household services. The Appellees presented no independent economic evidence regarding the replacement value of the decedent's services. The Appellees did, however, challenge Mr. Adams' conclusions based upon his reliance upon figures contained in a survey conducted in 1982 and based upon his failure to speak with neighbors or family members of the decedent. The Appellees' primary contention regarding damages is that most of the Appellant's evidence of damages was speculative and that the jury was entitled to reject it.

■ Under the particular facts of this case, we are compelled to conclude that the jury's award of only the funeral expenses must have been based upon some misinterpretation of the law of damages. "A verdict of a jury will be set aside where the amount thereof is such that, when considered in the light of the proof, it is clearly shown that the jury was misled by a mistaken view of the case." Syl. Pt. 3, *Raines v. Faulkner*, 131 W.Va. 10, 48 S.E.2d 393 (1947). We also explained in syllabus point 3 of *Biddle v. Haddix*, 154 W.Va. 748, 179 S.E.2d 215 (1971), as follows:

> In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

While we must refrain from substituting our judgment for that of the jury regarding damages, it must also be recognized that we are faced with the death of a forty-one year-old husband and father who, while not employed outside the home, contributed to his family through a variety of other means. We believe that the $4,000 verdict in this civil action was manifestly inadequate in amount and wholly unsupported by the evidence, even when viewed in a light most favorable to the Defendants.

## III.

■ In *Freshwater*, we identified four types of cases wherein allegations of inadequacy are made. Under *Freshwater*, the category to which a case belongs determines the resolution on appeal. In the syllabus of *Freshwater*, we explained:

> In a tort action for property damage and personal injuries this Court will set aside the jury verdict and award a new trial on all issues where: (1) the jury verdict is clearly inadequate when the evidence on damages is viewed most strongly in favor of defendant; (2) liability is contested and there is evidence to sustain a jury verdict in favor of either plaintiff or defendant; and (3) the jury award, while inadequate, is not so nominal under the evidence as to permit the court to infer that it was a defendant's verdict perversely expressed.

160 W.Va. at 156, 233 S.E.2d at 313. We identified the following four types of cases: type 1 "is where the plaintiff would have been entitled to a directed verdict on liability as a matter of law, and the damages are inadequate even when viewed most strongly in favor of the defendant." *Id.* at 160, 233 S.E.2d at 315. The proper remedy in a type 1 case is a remand on the issue of damages only. *Id.* A type 2 case "is one where liability is strongly contested and the award of damages is clearly inadequate if liability were proven." *Id.* The proper remedy in a type 2 case is remand on all issues. 160 W.Va. at 162, 233 S.E.2d at 316. A type 3 case "is the defendant's verdict perversely expressed and involves a factual situation in which liability is either tenuous or at least strongly contested by the defendant and the award of damages is so inadequate as to be nominal under the evidence in the case." *Id.* at 163, 233 S.E.2d at 316. The proper remedy in a type 3 case is to affirm the verdict. *Id.* In type 4 cases,

> [W]hile the plaintiff would not be entitled to a directed verdict on the matter of liability, the issue of liability has been so conclusively proven that an appellate court may infer that the jury's confusion was with regard to the measure of dam-

ages and not to liability. In this type of case an appellate court can feel justified in remanding the case for a new trial on the issue of damages alone because it would be unfair to put the plaintiff to the expense and aggravation of proving liability once again when he has been denied a proper and just verdict by the caprice and incompetence [sic] of a particular jury.

160 W.Va. at 164, 233 S.E.2d at 317. The proper remedy in a type 4 case is to remand for a new trial on the issue of damages. *Id.*

When the question of inadequacy was posed to the circuit court, it determined that this was a type 3 case where liability was tenuous and damages awarded were only nominal, thereby circumventing the need to explore further the basis for the inadequacy of the award. Simply put, if this case was indeed a type 3 case as the circuit court determined and as the Appellees now argue, then it was a defendant's verdict perversely expressed, and under *Freshwater* the circuit court correctly affirmed. The Appellants, on the other hand, argue that this was a type 2 case where liability was strongly contested and damages were clearly inadequate. In a type 2 case, an appellate court cannot infer from the verdict alone whether the jury was confused on liability or damages alone, and under *Freshwater*, it should be remanded on all issues.

Obviously, it is difficult to clearly distinguish type 2 and type 3 cases. *Freshwater* drew the distinction in this fashion:

In a type 2 case liability is also hotly contested, but there the award of damages, while inadequate, is by no means nominal. A type 2 case is distinguished from a type 3 case or defendant's verdict perversely expressed by the fact that an appellate court cannot determine whether the inadequacy of the verdict were a function of a misunderstanding about the law of liability or the law of damages. Conversely a type 3 case or defendant's verdict perversely expressed is identified by the nominal award of damages which permits an appellate court reasonably to infer that the error was made on liability rather than on damages. Litigants will continue to argue about what the term "nominal award under the facts of the case" means, yet if we could define it more precisely, the job of judges could be done by computers.

160 W.Va. at 163–64, 233 S.E.2d at 316–17.

Although on first glance this case might appear to revolve around an inquiry into the *Freshwater* typologies, we also must examine the far broader issue of whether the *Freshwater* framework retains continued viability[3] in light of the advent of principles of comparative negligence.[4]

In the *Freshwater* case, Justice Neely was insightful in his description of the

---

3. Specifically, the Appellant presented this argument to us in the following manner:

Prior to this Court's adoption of comparative negligence, the concept of a defendant's verdict perversely expressed made sense because the slightest negligence on the part of the plaintiff barred any recovery. Under those circumstances, in a case where a jury awarded some minimal sum of money, it could be argued that the jury attempted to compensate the plaintiff, even though the jury believed that the plaintiff was guilty of some negligence. Thus, to provide at least some relief to the plaintiff, rather than none at all, the jury might make a compromise and award only some of the minimal special damages proven.

However, with the advent of comparative negligence, which requires the jury to focus on the liability of the parties separate from the issue of damages and to make specific findings of negligence, the concept of a defendant's verdict perversely expressed is no long-

er a viable legal concept under West Virginia law. In this case, it cannot be disputed that the jury found Defendants' combined negligence to be 51%. Thus, under the law of this State and under the instructions given to the jury, the jury clearly found Defendants to be liable.

4. In *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979), we examined the existing rule of contributory negligence and recognized the manifest injustice of prohibiting recovery by a plaintiff if he was at fault in the slightest degree. We therefore modified the rule of contributory negligence and explained in syllabus point 2 that: "A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." 163 W.Va. at 332, 256 S.E.2d at 880.

types of inadequate damage awards and the real reason behind their adoption:

> The common thread which connects these four types of jury awards is a sum which is so low under the facts of the case that reasonable men cannot differ about its adequacy. Whenever a jury is called upon to compensate a litigant for pain, suffering, inconvenience, humiliation, or a host of other intangibles, it has long been accepted in practice, if not in the theory of jury instructions, that the jury takes into consideration relative degrees of fault in awarding compensation.

160 W.Va. at 165, 233 S.E.2d at 317. In *Bradley*, we finally addressed that reality in adopting principles of comparative negligence.

Although we have since continued to utilize the *Freshwater* framework,[5] it is clear that it is of limited usefulness. Prior to the introduction of comparative negligence principles, this Court, upon review of an inadequate award of damages by a jury, was compelled to determine the basis for such inadequacy without benefit of a quantified assessment of fault. For example, the concept of a defendant's verdict perversely expressed was necessary because under the former doctrine of contributory negligence, even the slightest negligence by a plaintiff would prevent recovery. Where a jury awarded a nominal sum to a plaintiff, it could be assumed that the jury had attempted to compensate the plaintiff at least in some limited fashion even though the jury may have perceived the plaintiff to be guilty of some degree of negligence. Recognizing that potential, the type 3 category was devised to permit appellate approval of what could reasonably be assumed to be the jury's intent.

With the emergence of concepts of comparative negligence, a jury must assess the negligence of each party and assign a specific percentage of fault to each party as it deems appropriate. *See Bradley,* 163 W.Va. at 343, 256 S.E.2d at 885–86. In *Freshwater,* the result of a type 3 determination was to affirm an otherwise viable and fair decision of a jury to award only a nominal amount to a plaintiff who had some degree of fault by making the assumption that it was a defendant's verdict perversely expressed. With the advent of comparative negligence, we no longer need to make any such assumption. The jury is now presented with the opportunity to make its decision regarding the allocation of fault perfectly clear.

---

5. Since the advent of comparative negligence in the 1979 *Bradley* opinion, we have on several occasions discussed and utilized the *Freshwater.* More noteworthy among these cases are the following: *Kaiser v. Hensley,* 173 W.Va. 548, 318 S.E.2d 598 (1983), in which we determined that an action by injured motorists to recover damages sustained when another motorist drove into their car was a type 1 *Freshwater* case in which the plaintiff would have been entitled to a directed verdict. The plaintiffs had received $9,000 in damages for a liability that had been admitted and the trial was on the issues of damages alone. After reviewing the alleged damages, we determined that the award was not inadequate when viewed most strongly in favor of the defendants. In *Martin v. Charleston Area Medical Center,* 181 W.Va. 308, 382 S.E.2d 502 (1989), we determined that a wrongful death action alleging medical malpractice constituted a type 2 *Freshwater* case in which liability was strongly contested and damages of only $250,000 for both economic and non-economic loss were clearly inadequate even when viewed in favor of the defendant. In *Hewett v. Frye,* 184 W.Va. 477, 401 S.E.2d 222 (1990), we found that a personal injury action subsequent to an automobile accident constituted a type 1 *Freshwater* case wherein liability was admitted and the sole issue for jury resolution was damages. We recognized that we had enunciated the standards by which the adequacy of a damage award will be reviewed in *Freshwater* and again determined that the verdict was not inadequate when viewed most favorably toward the defendant. In *Sullivan v. Lough,* 185 W.Va. 260, 406 S.E.2d 691 (1991), we determined that a personal injury action subsequent to an automobile accident was a type 4 case in which the issue of liability was so conclusively proven that the appellate court could infer that the jury's confusion was with regard to damages rather than liability. Although the jury had evidence of medical bills, chiropractic bills, housework charges, lawn care charges, pain and suffering, and loss of consortium, no damages were awarded. We therefore determined that a new trial was required on the issue of damages.

Despite the existence of these and other cases discussing the *Freshwater* typology since the advent of comparative negligence, we have not taken the opportunity prior to the case at hand to discuss the direct impact of comparative negligence on the *Freshwater* enunciation of standards by which the adequacy of a damage award will be reviewed.

Similarly, type 2, where liability was strongly contested and damages clearly inadequate (but not sufficiently so to be classified as nominal), created a method for reviewing inadequate verdicts where the appeal court could not discern from the verdict alone whether the jury was confused about liability or damages, and thus the case was remanded on both. The obvious benefit of comparative negligence in reviewing such cases is that it is no longer necessary for this Court to speculate as to whether the jury was confused on the issue of liability.

Thus, the viability of the *Freshwater* analytical framework for types 2 and 3 cases is limited by the advent of comparative negligence, because it is no longer necessary to look behind the verdict form on appeal to determine the jury's view on liability. *Freshwater* types 1 and 4, which themselves are close siblings, continue to exist based on a court's inherent right to set aside a verdict when it is not supported by the evidence. In type 1, for instance, liability is so clear that the plaintiff would have been entitled to a directed verdict. *Freshwater*, 160 W.Va. at 160, 233 S.E.2d at 315. As explained in *Freshwater*, type 1 is the "easiest type of inadequate jury award" and is a type in which "an appellate court need not agonize about reversing and remanding for a new trial on the issue of damages alone...." *Id.*

The type 4 case, similar in many respects to the type 1 case and distinguished only by the degree of liability, is also not impacted in such a major way by the advent of comparative negligence. "[W]hile the plaintiff would not be entitled to a directed verdict on the matter of liability, the issue of liability [in a type 4 case] has been so conclusively proven that an appellate court may infer that the jury's confusion was with regard to the measure of damages and not to liability." *Freshwater*, 160 W.Va. at 164, 233 S.E.2d at 317. The proper remedy in types 1 and 4 still is remand on the issue of damages alone. Where the appellate court is satisfied that the evidence clearly supports a plaintiff's right to recover, either through a Type 1 case where the plaintiff would have been entitled to a directed verdict or through a type 4 case where liability has been conclusively proven, the distinction between the applications of contributory negligence and comparative negligence is of little impact. Types 1 and 4 have always existed and the appellate court has continued inherent authority to remand on damages where liability is clear and damages are inadequate.

In the present case, the jury's assessment against the Defendants was twenty-six percent for the driver of the car and twenty-five percent to the trucking company, for a total of fifty-one percent to the Defendants. Only forty-nine percent was assessed against the Appellant's decedent. That verdict was clearly not a defendant's verdict perversely expressed. As we recognized in *Freshwater*, the typical pattern of a type 3 defendant's verdict perversely expressed is where a jury awarded "only a nominal sum as an act of mercy, and if interrogated in depth would have admitted that they did not really believe the defendant to be liable." 160 W.Va. at 163, 233 S.E.2d at 316. Here, although liability was hotly contested, the jury quantified their determination on the issue of fault in an immensely reasonable manner well-supported by the evidence.

Under the doctrine of comparative negligence, the process of determining exactly what the jury meant and how it intended to assess fault is a much more exact science than it was at the time *Freshwater* was decided. The act of "drawing of legitimate conclusions" or, in other words, deciphering what the jury intended, is no longer necessary because there is no question as to the intent of the jury. *Id.* Thus, we hold that the advent of comparative negligence severely limits the continued applicability of the *Freshwater* type 2 and 3 cases. Where a jury, pursuant to the doctrine of comparative negligence, assigns more than 51% negligence to a defendant or defendants, the *Freshwater* type 2 and 3 analysis are of greatly reduced value in categorizing the case. Where a jury has so precisely identified its assessment of fault, the speculation regarding possible confu-

sion on liability inherent in types 2 and 3 is no longer necessary. In categorizing future cases of alleged verdict inadequacy, the concepts which underlie *Freshwater* types 1 and 4 remain viable.

Thus, we conclude that the trial court erred in identifying this case as a type 3 situation under *Freshwater*. It is true that liability was hotly contested by the Defendant, but the jury found the Defendant more than nominally at fault when it concluded that the trucking company was twenty-five percent at fault.[6] Under the old *Freshwater* framework, this would have been a type 2 case where liability was hotly contested, but the Plaintiff proved more than a nominal liability. The substantial damages were clearly indicated from the evidence introduced by the Plaintiff and not contradicted by the Defendant. The jury's error was clear in failing to award adequate damages.

Based upon the foregoing, we affirm the decision of the jury regarding the allocation of fault but remand the matter for a new trial solely on the issue of damages.

Affirmed in part; Reversed in part; Remanded.

---

**6.** We caution as to the use of a single liability unit by a defendant where the jury has found the defendant liable and the defendant attempts to invoke a *Freshwater* analysis to escape paying the verdict under joint and several liability principles.