# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

CJH, Inc., a West Virginia business corporation,
**Plaintiff Below, Petitioner**

**vs)  No. 12-0825** (Putnam County 09-C-438)

Quadruple S Farms, LLC, a West Virginia limited
liability company, and Four-S Development,
LLC, a West Virginia limited liability company,
**Defendants Below, Respondents**

**FILED**

June 7, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner CJH, Inc., by counsel Kenneth E. Webb, Jr., John T. Poffenbarger, J. Mark Adkins, and Patrick C. Timony, appeals the Circuit Court of Putnam County's "Order Denying Plaintiff's Renewed Motion for Judgment as a Matter of Law, Motion for Judgment Notwithstanding the Verdict, or Alternatively, Plaintiff's Motion for New Trial on Damages" entered on May 24, 2012. Respondents Quadruple S Farms, LLC and Four-S Development, LLC (collectively "respondents"), by counsel Ann L. Haight, Luci R. Wellburn, and Erin J. Webb, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a West Virginia corporation that until May of 2010 owned and operated a Days Inn hotel franchise in Teays Valley, West Virginia. The Days Inn was on property previously owned and developed by Respondent Four-S Development, LLC, and was adjacent to property owned by Respondent Quadruple S Farms, LLC.

Petitioner purchased the property at issue in 1991. By way of background, petitioner's property was originally owned by Albert Summers individually or through his related companies (predecessors to respondents herein) in the mid-1980s. Putnam Development, Inc., (a Summers family company) contracted with M&T Construction to perform excavation work on the property. Randolph Engineering prepared the cut and fill calculations for the site that would become the Days Inn property. M&T Construction installed an approximately twelve to fifteen-

foot-wide "cut bench"[1] at the base of the sandstone layer of rock on the hillside adjacent to the site that would become petitioner's hotel property.

Albert and Dolores Summers sold the then-vacant property to Cardinal Industries in 1987 for the construction of a Knights Inn. According to respondents, Cardinal Industries developed the site, built the Knights Inn, and then filed for bankruptcy. In lieu of foreclosure, United Bank took the property and entered into a franchise agreement with Days Inn. According to respondents, between 1989 and 1991, United Bank altered the bench and the rock wall by placing "gabion baskets" (baskets of stone) along the hillside, eliminating the bench along that portion of the hillside adjacent to the hotel.

In 1991, petitioner purchased the property from United Bank and assumed the Days Inn franchise agreement. According to respondents, prior to petitioner's purchase, no independent inspections were performed; no geotechnical engineer examined the hillside; no structural engineer inspected the structures; and no surveys were performed.

In 2009, petitioner filed the instant civil action against respondents alleging respondents negligently developed the property, causing the hillside adjacent to petitioner's property to degrade quickly, which increased the water runoff onto petitioner's property. According to petitioner, this uncontrolled up-gradient water caused a massive rock fall on December 17, 2008. Petitioner alleged that the degradation of the hillside led to large boulders, debris, mud, and greater quantities of surface water to invade petitioner's property resulting in significant property damage, mold, and ultimately forced the franchise to cease operations in May of 2010. Petitioner sought damages in excess of $2.5 million.

The case went to trial for six days, November 28 through December 6, 2011. The jury found that respondents were negligent in the development and maintenance of their property and that the negligence was the proximate cause of damages to petitioner. The jury found that petitioner was entitled to recover $361,640 from respondents. The jury did not award punitive damages.

According to respondent, the evidence at trial established that when the hotel buildings were built, proper drainage structures were not installed or were inadequate; the buildings themselves were installed too close to the hillside to allow for proper ditch line and slope maintenance; roof drains were tied to undersized drainpipes located in the parking lot that could not handle the flow of water, which in turn allowed water to backup underneath the buildings; crawl spaces were located at the end of the buildings closest to the hillside allowing water to run under the buildings; gabion baskets were installed at the base of the hillside essentially eliminating any drainage ditch that had existed; and petitioner had not maintained the drainage structures or catch basins.

In addition, respondent contends that the evidence showed that after the rock fall in December of 2008, nothing more was done to divert water, clean out ditch lines or drains, or to remove the fallen rocks. Petitioner asserts that the evidence showed that it regularly inspected for

---

[1] The purpose of the "cut bench" was to catch any rocks that may fall from the high wall.

leaks, had diligent maintenance practices, and installed sump pumps to remove respondents' excess water from underneath the hotel facilities.

On May 3, 2012, the circuit court heard arguments on petitioner's post-trial motions. On May 24, 2012, the circuit court entered its "Order Denying Plaintiff's Renewed Motion for Judgment as a Matter of Law, Motion for Judgment Notwithstanding the Verdict, or Alternatively, Plaintiff's Motion for New Trial on Damages." The court ruled, *inter alia*, that: (1) the jury was properly instructed on the issue of mitigation of damages; (2) the court was "completely disappointed" with plaintiff's expert witness in the area of mold abatement, and that defendants' expert had the proper qualifications and basis to testify; (3) the court believed it was better to have the case tried and resolved on the merits rather than on exclusion of experts or upon the issue of punitive damages; (4) the defendants did not present improper "empty chair" evidence because it was the plaintiff who introduced evidence of the installation of gabion baskets by third parties, and also, the jury found the defendants to be negligent and to have caused damages to plaintiff, thereby negating the jury's improper consideration of the existence of an "empty chair;" (5) the valuation of the alleged "loss of use" and alleged "loss of profits" was a question of fact for the jury to decide whether these alleged losses were caused by the negligence of defendants or whether they were the result of plaintiff's decision to close the hotel; (6) the valuation of the hotel, the fair market value of the hotel, and the valuation of the property on which the hotel is located were proper questions for the jury; and (7) whether the jury believed the defendants' actions proximately caused all, any, or some portion of the damages claimed by plaintiff was a factual question for the jury, and the jury form used by the jury was prepared by plaintiff and did not require the jury to articulate how it arrived at the amount of damages.

Petitioner now appeals to this Court and raises six assignments of error. First, petitioner argues that the circuit court abused its discretion by instructing the jury on petitioner's alleged failure to mitigate its damages. Petitioner contends that respondents (1) failed to demonstrate any acts or omissions by petitioner that increased its damages, and (2) failed to establish the specific amount of money by which these acts or omissions increased petitioner's damages.

We disagree that the circuit court abused its discretion in giving the instruction. Initially, we note that our law does not currently require the party asserting the defense to demonstrate an exact amount by which the plaintiff increased its own damages by failing to mitigate. Turning to the instruction itself, we have held that "[t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard." Syl. Pt. 6, *Tennant v. Marion Health Care Fund, Inc.,* 194 W.Va. 97, 459 S.E.2d 375 (1995). Petitioner does not challenge the language of the court's instruction, but disputes the basis for giving it.

As to the basis for giving the instruction, we have held that "the defense of mitigation of damages is an affirmative defense, the burden of which lies entirely upon the party asserting it." *Voorhees v. Guyan Mach.,* 191 W.Va 450, 456, 446 S.E.2d 672, 678 (1994). "[A] person whose property is endangered or injured [must] use reasonable care to mitigate damages; but such person is only required to protect himself from the injurious consequence of the wrongful act by the exercise of ordinary effort and care and moderate expense." *Hardman Trucking, Inc. v.*

3

*Poling Trucking Co.,* 176 W.Va. 575, 579, 346 S.E.2d 551, 555 (1986), *citing Oresta v. Romano Bros., Inc.,* 137 W.Va. 633, 650-51, 73 S.E.2d 622, 632 (1952).

In this case, we find that there was sufficient evidence introduced to warrant the instruction. Petitioner's president and sole shareholder testified that while he had spent about $400,000 in 2004 to remodel and make some repairs to the property, he took no action to protect his hotel after the rock fall in December of 2008. Petitioner neither removed the fallen rocks nor even sought an estimate to do so. Testimony at trial revealed that removal of the rocks would cost approximately $50,000.[2] We find no error by the circuit court in giving the failure to mitigate instruction.

In its second assignment of error, petitioner argues the circuit court erred by failing to award petitioner its claimed damages as a matter of law because there is no reasonably certain evidence to contradict the amount of its damages. We note that respondents were found liable for negligence that caused damages to petitioner. However, we find that through their cross-examination and their case-in-chief, respondents effectively disputed the amount of damages to which petitioner was entitled.

Similarly, in its third assignment of error, petitioner contends that the circuit court should have alternatively awarded a new trial on damages because the jury conclusively established liability but awarded inadequate damages. The Court will not overturn a jury's verdict based on "[inadequacy] unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy." Syl. Pt. 2, *Fullmer v. Swift Energy Co., Inc.,* 185 W.Va. 45, 404 S.E.2d 534 (1991).

Petitioner's argument in its second and third assignments of error ignores the fact that liability and damages are separate issues requiring separate proof. While the jury found that respondents were negligent, petitioner failed to prove that respondents' negligence injured petitioner in the amount sought by petitioner and/or whether the entire amount of damages claimed was attributable to respondents' conduct. While petitioner contends that its claimed damages amounts were not rebutted, the jury was able to weigh the evidence and make a determination of the amount petitioner was entitled to recover though respondent's cross-examinations. "In an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." Syl. Pt. 3, *Big Lots Stores, Inc. v. Arbogast*, 228 W.Va. 616, 723 S.E.2d 846, 2012 WL 426758 (2012)(citations omitted). Under the facts of this case, the circuit court did not error in denying a new trial on damages.

Fourth, petitioner argues that the circuit court allowed respondents to inject "empty chair" argument through counsel's closing argument. In closing argument, respondents' counsel stated:

---

[2] It most likely resonated with the jury that while petitioner was claiming millions of dollars in damages from fallen rocks, he would not even spend a small fraction of that amount to have to have the rocks removed.

The question you have to decide is whether my client is responsible for [the damages]. Are we liable for it? Cardinal Industry I guess you could say basically put together the perfect storm. They bought the site, they crowded the site, they didn't have sufficient drainage for the site, all the things that Cardinal Industries did, and then what did they do? They went bankrupt.

"Empty chair" evidence is prohibited in West Virginia. *See Doe v. Wal-Mart Stores, Inc.,* 210 W.Va. 664, 558 S.E.2d 663 (2001). The record in this case reveals that petitioner argued at trial that respondents were responsible for the site development and drainage structures. However, petitioner in its case-in-chief offered evidence that Cardinal Industries was the entity that developed the hotel site. In response to petitioner placing the initial site design and drainage structures into controversy, respondents presented evidence to support its defense. Therefore, we find that any error committed by the circuit court in allowing "empty chair" evidence was invited by petitioner, and therefore, not subject to appeal. *See Roberts v. Consolidation Coal Co.,* 208 W.Va. 218, 539 S.E.2d 478 (2000)

Fifth, petitioner argues that the circuit court allowed respondents' experts to espouse opinions without the proper factual basis as required by the Rule 703 of the West Virginia Rules of Evidence, which provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible into evidence.

Petitioner contends that respondents' experts were permitted to testify that petitioner's excess water problems stemmed from inadequate onsite drainage controls and deferred maintenance, however, these experts never physically inspected the drainage pipes and failed to conduct any water calculations. Rule 703 does not limit admissibility of expert opinions to those opinions formed solely on the basis of first-hand experience. *See Capper v. Gates,* 193 W.Va. 9, 454 W.Va. 54 (1994). The record shows that respondents' experts based their opinions on photographs, measurements, trial and deposition testimony of other fact witnesses, maintenance logs, site layout plans, and diagrams. Accordingly, we see no error in allowing respondents' experts to offer their opinions as there was a proper factual basis therefor.

Petitioner's final assignment of error is that the circuit court permitted respondents to present unauthenticated business records to the jury. Specifically, petitioner objects to the admission of Days Inn Worldwide "Quality Assurance Reports" that were used by respondent to show that petitioner's franchise was failing prior to the rock fall. Respondents' witness on this issue was the Days Inn Worldwide records custodian, who did not author the reports, but properly testified that the reports were what they were claimed to be, which is the essence of authentication under Rule 901 of the West Virginia Rules of Evidence. Additionally, we find that the reports were admissible as "business records" under Rule 803(6) of the West Virginia Rules of Evidence. Therefore, we see no error in the circuit court allowing these reports to be admitted.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 7, 2013

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II


**DISSENTING:**

Chief Justice Brent D. Benjamin
Justice Margaret L. Workman