318 S.E.2d 598

**Everett J. KAISER, et al.**

v.

**Jeffrey K. HENSLEY, et al.**

No. 15788.

Supreme Court of Appeals of
West Virginia.

May 26, 1983.

Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Norman K. Fenstermaker and William P. Hagenbuch, Jr., Huntington, for appellants.

Campbell, Woods, Bagley, Emerson, McNeer & Herndon, James D. McQueen, Jr. and Cheryl L. Connelly, Huntington, for appellees.

NEELY, Justice:

Our appellants, Mr. and Mrs. Kaiser, are aggrieved by a jury award for damages sustained when appellees Jeffrey and Keith Hensley drove into their car on U.S. Route 60 near Huntington. The appellants allege that the award did not amount to the actual damages incurred, and, since liability was admitted, was therefore insufficient as a matter of law. Appellants further allege that in his argument appellees' counsel repeatedly alluded to the uninsured status of his clients in violation of our rule against such insinuations announced in *Graham v. Wriston*, 146 W.Va. 484, 120 S.E.2d 713 (1961). We are convinced by neither argument, and affirm the Cabell County Circuit Court.

I

Liability was admitted by the appellees, and the trial was solely on the issue of damages. The jury below awarded damages of $5,000.00 to Mr. Kaiser and $4,000.00 to his wife. The appellees had stipulated that, with respect to Mr. Kaiser, damages of $333.00 for medical expenses were reasonable and necessarily incurred and, with respect to Mrs. Kaiser, that damages of $900.00 for the destruction of her automobile and $277.00 in medical expenses were reasonable and necessarily incurred.

In addition to the stipulated damages, the appellants claimed special damages. First, they claimed special damages of $2,294.00 for medical treatment of a hiatal hernia caused by excessive doses of aspirin taken by Mr. Kaiser to relieve back pain caused by the accident. Second, they claimed special damages of $2,124.00 and $4,075.34 for maintenance work which Mr. and Mrs. Kaiser, respectively, were unable to perform themselves as a result of injuries received in the accident. The special damages were contested at trial by the appellees on the grounds that there was no substantial causal relationship between the crash and the hiatal hernia, that Mr. Kaiser had failed to mitigate his damages properly, and that much of the hiring out of the maintenance work was not actually necessitated by the appellants' injuries. The judgments brought by the jury evidently represented their resolution of this conflict.

We analyzed the standards by which to review damage awards in the case of *Freshwater v. Booth*, 160 W.Va. 156, 233 S.E.2d 312 (1977). Under the typology developed by this Court in *Freshwater*, this is a Type 1 case in that the plaintiff below

"would have been entitled to a directed verdict on liability as a matter of law," 160 W.Va. at 160, 233 S.E.2d, at 315. The question before us, then, is whether "the damages are inadequate even when viewed most strongly in favor of the defendant," *id.*, the second condition required of a Type 1 case before it will be reversed. If this latter condition is satisfied, "an appellate court need not agonize about reversing and remanding for a new trial on the issue of damages alone and that is the proper course." *Id.*

■ Viewed most strongly in favor of the appellees, however, the evidence permits a conclusion that Mr. Kaiser was damaged by treating himself with excessive doses of aspirin, and that this damage would have been averted had Mr. Kaiser obtained proper medical treatment.[1] Again viewed most strongly in favor of appellees, the evidence permits a conclusion that the wages paid out by Mr. and Mrs. Kaiser included significant amounts for work which the Kaisers had not done themselves before the accident, and that much of the hiring out of work did not follow from incapacitation caused by the accident.

■ Our most generous conclusion regarding adequacy of damages was reached in *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239 (1976) (*reh. denied,* 1977) in which we stated:

> Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside. 160 W.Va. at 136, 231 S.E.2d at 243.

The only elements of damage which have been specifically proven in uncontroverted amounts in this case are the stipulated damages. The amounts of the special dam-

ages are directly controverted by appellees—not over a question of liability or unreasonableness, but rather on the grounds that the costs were not incurred by the Kaisers *as a result* of the accident. When the stipulated damages are subtracted from the award, a substantial remainder is left as compensation for injuries and consequent pain and suffering. Even under the *King v. Bittinger* generous standard of inadequacy, the awards are not inadequate when the evidence is viewed most strongly in favor of the defendant. The second condition of *Freshwater v. Booth, supra,* is therefore not met, and a retrial is consequently not indicated.

## II

Appellants go on to allege that at trial below the Hensleys' lawyer deliberately attempted to create the false impression in the minds of the jury that the Hensleys were uninsured, and that any award would have to come out of their own pockets. This was allegedly accomplished by the lawyer's describing the occupations of the Hensleys and stating, one time in the opening argument and seven times in the closing argument, that they would be obliged "to pay" any judgment rendered.

■ It was not improper for appellees' counsel to have mentioned the occupations of his clients.[2] It is a common practice for trial attorneys to introduce a client to the jury, and elicit from the client his or her age, address, family situation and employment. We do not condemn this practice. However, the repetition by the lawyer of his reference to "payment" presents a more perplexing issue.

■ In *Graham v. Wriston*, 146 W.Va. 484, 120 S.E.2d 713 (1961), we had occasion

---

**1.** The duty of a personal injury tort victim to seek proper medical care is discussed in an annotation found at 62 A.L.R.3d 70 (1975). We do not need to address the underlying issue at this point, except to note that the court acted properly in submitting this issue to the jury:

> Since the test of the failure of plaintiff to minimize damages by seeking nonsurgical medical help is what the ordinary, reasonable man would have done under the same cir-

cumstances, it is clear that whether he has acted properly is to be determined in the light of all the circumstances of the particular case, and will be treated as a jury question except in the clearest cases. 62 A.L.R.3d, at 74.

**2.** Keith Hensley is a supervisor at a towel cleaning service and Jeffrey Hensley is assistant manager of a McDonald's restaurant in Charlotte, North Carolina.

to discuss the propriety of allusions to a defendant's uninsured status. In that case our legal conclusion was that:

> ... the jury should not be apprised in any way that the defendant is not insured against liability, not only because such fact is immaterial to any proper issue in the case, but also because of the tendency such fact may have to cause the jury out of sympathy for the defendant to relieve him improperly from liability, or to return in favor of the plaintiff a verdict which is inadequate in amount. *Id.*, at 718.

We stand by that conclusion today. The issue before us is thus a factual one—whether the Hensleys' lawyer apprised the jury that these defendants were not insured against liability. He obviously did not do so explicitly, but *Graham v. Wriston, supra,* also requires reversal if an attorney clearly implies that his client is uninsured.

■ The statement that we singled out for condemnation in *Graham v. Wriston,*

*supra,* was made by defendant's counsel in argument to the jury:

> "This is a matter of quite a great deal of importance to Orville Wriston. As I said the other day to some of you, when you go to your jury room you are in the position of having a blank check with his name signed to it and you can fill it in for any amount you want to and he will have to pay it. That is the measure of your responsibility in this case, and I know you realize it. I know I do. And I particularly know that Orville Wriston keenly realizes it." 146 W.Va. at 494, 120 S.E.2d at 720.

As we noted in *Graham,* our particular objection to that statement was that it "could have no conceivable relevancy to any proper issue in the case." *Id.*

■ Their lawyer's repetitive mention of the Hensleys' having "to pay" is not in this category of otherwise irrelevant statement. The seven references to payment are directly related to proper arguments by the lawyer.[3] Where causality is an issue con-

---

3. With due apologies for the length of this footnote, we present the salient portions of counsel's closing argument. The length is necessary to provide the context. In this first segment defendant's counsel is arguing concerning the plaintiff's duty to mitigate his damages:

> Our system of law has evolved and developed through the courts and through the legislatures also to the extent that we recognize that a person who is injured because of another person's fault cannot merely sit back and let his damages accumulate without taking reasonable action in due course, reasonable effort to minimize the loss. In other words, you can't—you just can't let things compound and grow and grow and say, 'Well, if I don't do that or if I don't do this, then my problem will be worse, my damages will be higher, and then my recovery will be higher.' The law requires you to take reasonable action to take care of the injuries or damages you have seen. And that is a very important part of this case and that is the part of this case which I think bears directly upon how much you are going to make or decide that Keith Hensley or his son, Jeffrey Hensley, have *to pay.* Now they are required *to pay* fair and just compensation for the injuries which were proximately caused by the accident, and there is no quibble and no argument from me on that. There are some things that we have stipulated to and are confessing to you. (Emphasis supplied)

In this second segment of argument defendants' counsel is arguing that the hiring of all of

the laborers was not necessitated by the accident:

> ...There might be a reasonable period of time when they were receiving the treatments and when they were incapacitated during that first three to six months after the accident that you might be justified in compensating them for labor that they had to have done in their own place.
>
> Why do I object to the rest of it? Why do I think it is not fair and reasonable to award them for their labor for maintaining their property from the accident until now and from now forward? Why do I object to that? I talked to you a minute ago about the duty to mitigate damages. And the Court has instructed you on that. What have they done? You know, when a worker or a laborer or an employee in a plant, or someone who works for a salary is laid off from work and he can't earn his wage, he has to come in and show and prove that he can't work. If he doesn't he suffers the consequences. He has to show by medical testimony or by some reasonable evidence that he is incapacitated from working. He gets tests run on him to see how much he can lift, how much he can bend, and so forth. There is a lot of objective facts that go into that kind of decision. All that we have to support Mr. and Mrs. Kaiser's claim that they had to pay out more for labor is what they have said. They did not seek any medical treatment during this period from mid-1979 forward to help them get back to work. It is

cerning the various elements of the damage, the question of who should be the one to pay for what is a question that a lawyer is very likely to argue. In fact, appellants' own lawyer used a similar argument in his own closing statement.[4] Furthermore, the seven references occurred over eighteen pages of transcript. While the use of "to pay" is perhaps unfortunate in comparison with "to be held responsible for," it was not used so regularly as to drum the concept of payment, and consequently insurance, into the jurors' heads. And, to repeat, its use followed from the arguments being made, and the arguments themselves were legitimate.

We must concede that the statements made by respondents' counsel may well have been inflammatory and prejudicial, but they are not inflammatory and prejudicial in cold print. To hold that they were would unduly restrict the opportunity for

possible and reasonable to infer that if they had gone to somebody and said, 'Look, I have got to get back to work and get back to my full capacity. Is there anything you can do for me? Can you give me medication to hold the pain down? Is there a support or brace I can wear, or is there something I can do to help me get back into the full swing?' No. And in Mr. Kaiser's case and Mrs. Kaiser's case that's understandable. They have worked hard. They have worked long. They have retired. They have got this other business. It is not a hobby, it is a business. They have got a large business for renting real estate. I don't know how many units Mr. Kaiser testified to. But they have the right, (1) they could raise their rent to accommodate it if they want to. There is no evidence on that, and I am not arguing that they should have done that. But (2) they have the right to sit down and quit, and nobody could argue that they don't. I couldn't argue it. They are taking the position that they would have if they were employees or workers. "I couldn't work." Well, where is the evidence? Where is the support? Where is the doctor saying that he couldn't lift this much or that much? Or he shouldn't bend or whatever?

Dr. Scott says, and I will go back and repeat it again, 'No serious injury to the musculoskeletal in the accident. Able to bend back smoothly and about as much as I would anticipate for a man his age.'

I mean, the evidence just doesn't support the idea that Mr. Keith Hensley *should pay for* all those laborers that came in from the day of the accident or from now on up until today. It may support a period of three to four months, or six months, and if you want to add that up and add that onto this figure, I don't have any problem with that. If the figures look like the kind of work he spoke of, fine.

Now Mr. Stubblefield came in and he testified what kind of work he did. That didn't sound like heavy labor to me. I don't know what is involved in what he did, but that didn't sound like heavy labor. He came in and performed service, regular routine and upkeep service on some air conditioners. Is that the kind of charges that Mr. Hensley is going to have *to pay for*? Is that fair? Is that reasonable? You have to judge that and you have to decide. (Emphasis supplied)

In this final section counsel has summarized and urges the jury to be fair and reasonable, not guided by feelings of sympathy:

So, on these figures, based upon what I have said, you have to add something for—I will put it over here—for pain and suffering. You have to add something for pain and suffering, past, present, and if you think it has been shown to a reasonable degree of certainty, the future. There really hasn't been any evidence of future, in my judgment, but you have to evaluate the evidence as you heard it. Then, if you want to add on for the laborers, that's fine. You have to judge that yourself. If you want to add on for the hernia, for the bleeding, that's fine. If you want to object and reduce that to a reasonable sum, depending on the circumstances of this case and in accordance with the evidence and the law, and you want to be fair and reasonable on that, that's fine. But when we boil it all down and when we come to the bottom line of this case, you have to be the judge and it is not only Mr. Kaiser's and Mrs. Kaiser's right to recover a fair and reasonable sum for their damages, but it is also Mr. Hensley's duty and his son's duty *to pay* a reasonable and fair sum for the damages they have caused... [A]s jurors, you judge the standards of what will be fair, and what you decide Mr. Hensley has *to pay*, he or his son. You should make no assumptions about Mr. Hensley. We weren't permitted to put on evidence and should not be permitted to put on evidence about his circumstances, and so forth. You should treat him the same as you would treat any other man ... And likewise you should treat Mr. and Mrs. Kaiser the same as you would any other person, notwithstanding the fact that you may feel some sympathy for them. They are nice people. I have not attempted to attack them in any way as people. They are nice people, and I can see where you might feel some sympathy, but you have got to guard against that in this case. (Emphasis supplied)

4. Appellant's counsel argued in closing; "Now, are they saying that we ought to have been going to a hospital for three months? Would they have wanted to pay that bill?"

argument of defense lawyers. Furthermore, if these statements were prejudicial or inflammatory it is only because the demeanor of the lawyer at trial made them so, and the realm of the arching eyebrow and the insinuating tone is properly patrolled by the trial judge. In this case he found no fault in the lawyer's argument, and we accept his decision.

For the foregoing reasons the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.