723 S.E.2d 846

**BIG LOTS STORES, INC., Petitioner**

v.

**Rebecca ARBOGAST and Kevin M. Arbogast, Respondents.**

No. 11–1260.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2012.

Decided Feb. 9, 2012.

Carol P. Smith, Harold F. Salsbery, Frost, Brown & Todd, Charleston, WV, for Petitioner.

Richard D. Dunbar, Dunbar & Fowler, Parkersburg, WV, for Respondents.

PER CURIAM:

Big Lots Stores, Inc. ("Big Lots") appeals from the July 16, 2010, order of the Circuit Court of Wood County setting aside the jury verdict entered in this matter and granting Appellees Rebecca Arbogast and Kevin Arbogast a new trial solely on the issue of damages. As grounds for its decision, the trial court ruled that the jury's decision to award damages for past and future medical expenses but not to award damages for past and future pain and suffering rendered the verdict inadequate. The trial court found that the evidence adduced by Ms. Arbogast on the issue of her medical injuries and related pain and suffering was uncontroverted. Appellant disputes this finding and argues, additionally, that the trial court wrongly invaded the province of the jury in setting the damage award aside. Upon our careful and considered review of this matter, we determine that the trial court committed error in awarding a new trial. Accordingly, we reverse.

## I. Factual and Procedural Background

Ms. Arbogast was standing at a checkout counter paying for her selected merchandise on November 1, 2004, when a Big Lots employee pushing a folded day bed [1] on a two-wheeled dolly bumped into her left leg with the dolly. The evidence is disputed with regard to whether the physical contact made with Ms. Arbogast's body was minimal and light in nature or of a heavier and more forceful nature. The jury was shown a videotape which depicted the incident at issue in three second intervals.

Mr. John Potts, the Big Lots employee who was pushing the dolly, testified that he did not see Ms. Arbogast prior to realizing that he had bumped into something. At this point, Mr. Potts immediately stopped and asked Ms. Arbogast whether she was alright and whether she required any medical attention. She responded to his inquiries by stating, "No, no I am fine" or "I will be fine." He testified that she did not "cry out" when he bumped into the back of her left leg, above the ankle but below the calf. The store manager, John Richardson, was called to the front of the store by the service desk employee, Sue Hersman, who was handling the checkout process for Ms. Arbogast.

Ms. Hersman testified that she had tried with no success to get Mr. Potts' attention just prior to the accident, after recognizing that he was getting too close to the area where Ms. Arbogast was standing. During her deposition, Ms. Hersman testified that Ms. Arbogast had "gasped" upon being run into by the dolly or mattress itself.[2] At trial, however, Ms. Hersman altered her testimony to indicate that Ms. Arbogast had "spoke[n], but she didn't cry out or anything like that."

Ms. Arbogast's testimony contrasted with that given by the employees of Big Lots. She testified that upon being bumped into, she "felt an explosion of pain in [her] leg" and "yelled out, 'Oh, god.'" When she looked at her leg in the store just after the incident,

Ms. Arbogast stated that "[t]here was already a big red mark on the side and a small red mark right at the bottom of the knee-cap." Asked at trial if she had been "able to make it out to the car ... without any assistance," Ms. Arbogast answered, "I had to." And by the time she got to the car, she indicated that her leg had already begun to swell. While recalling that Mr. Potts said "I'm sorry" three times upon realizing he had struck her, Ms. Arbogast did not remember anyone offering to call an ambulance for her. Once home, she elevated her leg and applied ice to it.

One week after the accident Ms. Arbogast went to the Mountaineer Pain Relief and Rehabilitation Center ("Pain Center") with complaints about her left knee. She had been treated at this facility for seven years for chronic pain in her left arm after sustaining nerve damage during a phlebotomy, which resulted in a diagnosis of reflection sympathetic dystrophy. For most of that time, Dr. Shramowiat, a Pain Center physician, was prescribing methadone for the pain related to her nerve damage. Ms. Arbogast testified that when she presented at the Pain Center one week after the incident "the knot was still there, that big golf ball knot was still there, and the bruising and swelling and stuff."

On October 31, 2006, Ms. Arbogast and her husband filed a lawsuit against Big Lots through which they asserted claims grounded in both negligence and loss of consortium. At the conclusion of the trial held on June 25 and 26, 2008, the jury found for the Arbogasts on the issue of Big Lots' liability for the negligent actions of its employee Mr. Potts. Pursuant to the verdict form, the jury awarded $13,877.46 for past hospital [3] and medical expenses and $15,000.00 for future medical expenses. The jury opted not to make an award for past or future pain and suffering or past or future loss of enjoyment of life. For each of those four damage ele-

---

1. Mr. Potts, the employee who was transporting the bed, which he also referred to as a rollaway bed, described it as a mattress on a frame and springs. He further indicated that the bed was encased in plastic.

2. No one was certain whether it was the bed itself or the dolly which made contact with Ms. Arbogast's leg.

3. This amount was the entirety of Ms. Arbogast's past medical bills.

ments, they placed a "–0–" in the corresponding blank on the verdict form.

The Arbogasts filed a motion for a new trial, asserting that the jury's failure to award damages for pain and suffering and loss of enjoyment of life rendered the verdict inadequate. By order entered on July 16, 2010, the trial court granted the motion for a new trial solely on the issue of damages. In support of its decision, the lower court relied on its finding that Ms. Arbogast had introduced uncontroverted evidence of her pain and suffering and her reduced enjoyment of life due to her injury. Reasoning that the award of future medical expenses was clearly intended for pain control, the trial court concluded that the jury's failure to award pain and suffering or loss of enjoyment of life damages indicated "a mistaken view of the case."

Through this appeal, Big Lots seeks to have the trial court's order awarding a new trial set aside and to have the jury verdict reinstated in its entirety.

## II.  Standard of Review

■ In reviewing the trial court's order granting a new trial, we are guided by the following precepts:

Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. Pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). We we have explained that

'[a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994) … Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the

existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.'

*Williams v. Charleston Area Med. Ctr.*, 215 W.Va. 15, 18, 592 S.E.2d 794, 797 (2003) (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995)). With these principles in mind, we proceed to determine whether the lower court abused its discretion with its decision to grant a new trial in this case.

## III.  Discussion

■ Big Lots disputes the trial court's conclusion that the evidence introduced at trial concerning Ms. Arbogast's past and future pain and suffering and her past and future impaired ability to enjoy life was uncontroverted. While she testified that when she sought medical treatment from Dr. Shramowiat a week after the incident she had a golf-ball sized knot and considerable swelling, the doctor's progress notes from the November 8, 2004, examination indicate: "Some slight swelling is noted laterally." Ms. Arbogast told the jury that her pain continued during the Spring and Summer of 2005 and "has never stopped hurting." As Big Lots observes, however, Dr. Shramowiat's progress notes, which are dated April 6, 2005; June 1, 2005; July 6, 2005; and August 10, 2005, demonstrate that she did not continuously experience pain in her left knee.[4] Her testimony of unabated swelling is similarly not supported by the medical evidence. When Dr. Snead, an orthopedic surgeon, examined her on April 5, 2006, he found that her "left knee was not swollen."

In addition to the conflicting medical evidence on the issue of Ms. Arbogast's pain and suffering, Big Lots maintains that the jury was presented with conflicting evidence regarding both the circumstances and severity of the incident itself. While Ms. Arbogast testified that she experienced a striking forceful enough to cause her knee to buckle and to reach for the counter while screaming

---

4. Whereas Ms. Arbogast reported knee-related pain during other visits to Dr. Shramowiat, she made no complaints of knee pain during those particular office visits.

out, the videotape which the jury watched at trial does not corroborate her version of the incident. Moreover, the jury was provided with alternate reasons for her pain-related complaints. Not only did the jury hear Dr. Shramowiat testify that Ms. Arbogast will continue to require pain medication for her arm injury for the rest of her life, but they were apprised that she was in a car accident three months after the incident at issue here.

In response to these arguments, Ms. Arbogast relies on an excerpt from Dr. Dauphin, the independent medical examiner whose report was introduced at trial.[5] To support her claim of uncontradicted proof of pain and suffering, she refers to the October 30, 2007, report of Dr. Dauphin which indicates that Ms. Arbogast "continues to have instability and pain."[6] Based on this evidence alone, Ms. Arbogast contends that the jury should have awarded pain related damages.

This Court has previously considered whether a jury's failure to award any damages for pain and suffering while awarding pain-related medical expenses renders a verdict inadequate. In *Marsch v. American Electric Power Co.,* 207 W.Va. 174, 530 S.E.2d 173 (1999), we discussed how the existence of contradictory evidence provided the jury with a basis for making its determination. Explaining our decision to uphold the jury award, we stated:

> This Court has a responsibility to refrain from substituting its own judgment for that of the jury regarding the pain and suffering damages. We find that the absence of pain and suffering damages was supported by the evidence. The jury was presented with conflicting evidence, and some degree of difficulty was therefore encountered in separating the causes of any pain and suffering endured by the Appellant. As the Supreme Court of Illinois succinctly expressed in *Snover v. McGraw,* 172 Ill.2d 438, 217 Ill.Dec. 734, 667 N.E.2d 1310 (1996), a jury may award

pain-related medical expenses and may simultaneously determine that evidence of pain and suffering was insufficient to support a monetary award.... As in the present case, the expert testimony regarding the plaintiff's injuries was in conflict, and there was no indication of jury mistake, confusion, partiality, or prejudice.

207 W.Va. at 182–83, 530 S.E.2d at 181–82.

Of importance to our examination in *Marsch* was the fact that, just as in this case, the plaintiff's preexisting and subsequent injuries may have made it difficult for the jury to distill the amount of pain and suffering specifically attributable to the subject injury. *Id.* at 182–84, 530 S.E.2d at 181–83. In addition to hearing testimony about Ms. Arbogast's continuing treatment for nerve damage related pain, the jury heard evidence that she had previously been seen using a cane in the Big Lots store[7] and that she was involved in a vehicular accident a few months after the subject incident.

■ As we stated in *Bressler v. Mull's Grocery Mart,* 194 W.Va. 618, 461 S.E.2d 124 (1995), "[l]ike a finding of liability, an award of damages, is a factual determination reserved for the jury." *Id.* at 622, 461 S.E.2d at 128. Emphasizing the discretionary nature of jury awards in syllabus point two of *Richmond v. Campbell,* 148 W.Va. 595, 136 S.E.2d 877 (1964), we articulated:

> Compensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based. The amount of compensation for such injuries is left to the sound discretion of the jury, and there is no authority for a court to substitute its opinion for that of the jury. A mere difference in opinion between the court and the jury as to the amount of recovery in such cases will not warrant the granting of a new trial on the ground of inadequacy

---

**5.** Dr. Dauphin did not testify at trial.

**6.** We note, however, some apparent inconsistency with regard to the issue of stability in Dr. Dauphin's report as he also indicated that Ms. Arbogast's knee was "stable in all planes and there is no effusion."

**7.** Ms. Hersman, the Big Lots employee who handled the checkout, testified that she had previously seen Ms. Arbogast walking with a cane in the store. Ms. Arbogast testified that she had never used a cane before injuring her knee at the Big Lots store.

unless the verdict is so small that it clearly indicates that the jury was influenced by improper motives.

There has been no suggestion that the jury was wrongly influenced or that the verdict resulted from improper motives.

We have recognized that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." Syl. Pt. 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983). Applying this standard, we must consider that the jury heard evidence at trial that challenged Ms. Arbogast's credibility concerning the level of discomfort and pain she continued to have following the Big Lots incident. The jury also heard evidence suggesting that the pain she would continue to experience was not easily distinguished from her preexisting nerve injury. Finally, the jury was informed of the fact that Ms. Arbogast may have sustained injury to her knee independent of the Big Lots incident. In light of these factors that the jury was required to weigh,[8] we conclude that the evidence adduced in this case fully supports the jury's decision not to award damages for pain and suffering or for lost enjoyment of life as a result of the checkout incident at Big Lots.

Following a careful review of the record in this case, we find no basis for the trial court's finding that the evidence of pain and suffering and lost enjoyment of life was uncontroverted or its conclusion that the verdict returned by the jury was inadequate. Consequently, we determine that the trial court abused its discretion in granting a new trial to Ms. Arbogast on the issue of damages. Accordingly, the decision of the Circuit Court of Wood County is reversed.

Reversed.

---

8. The jury was instructed as follows:
   If the jury is uncertain as to whether any particular element of damage, claimed by the Plaintiff, was caused by the alleged negligent act of the Defendant, or if it appears just as probable that any injury or element of damage complained of by the Plaintiff resulted from a cause other than the alleged negligence of the Defendant, then the Plaintiff cannot recover for that element of damage.