## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Ashley D. Gunno,**
**Petitioner**

**FILED**

**November 17, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 15-0825** (Kanawha County 12-C-1188)

**Kevin C. McNair,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Ashley D. Gunno appeals the order of the Circuit Court of Kanawha County entered July 28, 2015, that denied her motion for a new trial. Petitioner was injured in a car accident caused by Respondent Kevin C. McNair. On appeal, she challenges the jury's verdict awarding no damages for her injuries despite Respondent's admission of responsibility for the accident and a jury finding that Petitioner was injured as a proximate result of the accident. Petitioner, by counsel Damon L. Ellis and Anthony Majestro, filed a brief with this Court. Respondent, by counsel Geoffrey A. Haddad, filed a response.

This Court has considered the record on appeal, the parties' briefs, and their oral arguments. Upon our review, we believe that this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision reversing the circuit court's order. For the reasons expressed below, the July 28, 2015, order is reversed and this matter is remanded for further proceedings consistent with this decision.

On September 13, 2011, Petitioner and Respondent were involved in an automobile accident in Kanawha County as Petitioner was driving home from work along Route 119. As Petitioner approached the intersection of Route 119 and Oakwood Road, a van driven by Respondent turned in front of her. Petitioner was unable to avoid colliding with the van. The collision caused Petitioner's car to spin around and hit a third vehicle. As a result of this accident, Petitioner's car was a total loss and Respondent's vehicle suffered heavy damage.

Petitioner was treated at the scene by emergency responders and was transported to Charleston Area Medical Center for further evaluation. Petitioner testified that she told her treating physicians of pain in her neck and that when the doctor moved her legs, she

1

experienced intense back and neck pain. After her release from the emergency room, Petitioner went home and continued to experience pain and soreness, which kept her from sleeping. She testified that the pain was miserable and that she could not move without experiencing more pain.

Petitioner saw Dr. Matthew Walker, an orthopedic specialist, to address persistent pain in her neck, which she described as radiating down her arms when she moved her neck, back pain, and intermittent burning sensations. Dr. Walker examined her and recommended one month off work for recovery. Dr. Walker also recommended physical therapy, which she received, and use of a TENS unit for pain. Petitioner asserted that the TENS unit provided only temporary relief. Dr. Walker ultimately discharged Petitioner from the orthopedist because there was nothing left that could be done to treat her symptoms.

Petitioner then sought treatment with Dr. Jay McClanahan, a chiropractor, for the burning, aching, and throbbing pain she continued to experience in her neck and back. She claimed that her neck pain was more severe than her back pain. Dr. McClanahan ordered her to remain off work for three to four more weeks. Petitioner was treated by Dr. McClanahan from October of 2011 through the spring of 2012, for a total of thirty treatments. Dr. McClanahan found that Petitioner had decreased range of motion and muscle spasms. While she was not completely pain free following her treatments, she returned to work with restrictions and eventually was released to her normal work as a nurse.

Petitioner claimed that she continued to feel pain while at work and at home. She maintained a home therapy program, including use of a TENS unit. She later sought treatment with the Holzer Clinic, where she received trigger point injections that initially relieved the pain, but she claimed the pain eventually returned. She also returned to Dr. McClanahan for another 10 to 15 treatments, concentrating on pain relief and increasing her range of motion, but these treatments ended when Petitioner could not afford the cost of treatment. Her pain continued, interfering with her care of her son, who was born after the accident in 2014.

In June of 2012, Petitioner initiated this personal injury action against Respondent for damages arising from the accident. At trial, Dr. McClanahan testified that Petitioner suffered a permanent injury from the accident, one from which she will never fully recover. In addition, Dr. McClanahan suggested that she will continue to suffer flare-ups and that there is nothing she can do to prevent these. Petitioner's husband, Rick Comer, testified at trial about seeing the aftermath of the accident and about his wife's pain and suffering. He also confirmed that Petitioner was continuing to have problems with pain.

At the behest of Respondent, Dr. Bruce Guberman testified during the trial. Respondent hired Dr. Guberman to review Petitioner's medical records. He testified that

there was no evidence of pre-existing cervical or neck pain prior to the automobile accident. He examined Petitioner on one occasion on May 29, 2013. Dr. Guberman testified that at the time of this examination, Petitioner indicated that she was still suffering from persistent cervical and lumbar strain from the accident. He testified that Petitioner's injuries were subjective and not supported by the objective diagnostic tests he administered, which resulted in normal findings. Dr. Guberman did acknowledge that Petitioner's past medical records contained objective evidence of her pain and injury.

Dr. Guberman also testified that approximately one month after the automobile accident, Petitioner fell. This was not initially reported to Dr. Guberman in the course of his examination of her. At trial, Petitioner testified that she tripped and fell while bracing herself, which resulted in increased and very intense neck pain. Dr. Guberman opined that the character of Petitioner's injuries and complaints changed after this fall.

Because Respondent admitted that he was responsible for the accident, liability for the accident was not contested. As a result of a strategic trial decision, Petitioner chose not to offer her medical bills into evidence or to seek recovery of the amount of the medical bills or lost wages. Because no evidence was offered during Petitioner's case on the issues of past medical expenses, past lost wages, past vocational loss, future medical expenses, future lost wages, and future vocational loss, Respondent moved mid-trial for judgment in his favor on these issues. The trial court granted Respondent's motion, and Petitioner's case went to the jury on two issues: (1) whether Petitioner was injured as a proximate result of the automobile accident and, if so, (2) the amount of damages Petitioner should be awarded for harms and losses, including, but not limited to, past and/or future physical and mental pain and suffering, and reduced ability to enjoy life.

The jury deliberated and returned a verdict as follows: On the issue of whether the petitioner was injured as a proximate result of the accident, the jury answered "Yes." On the second issue regarding the compensation to which Petitioner was entitled for harms and losses, including, but not limited to past and/or future physical and mental pain and suffering and reduced ability to enjoy life, the jury awarded $0 in damages. Immediately after the jurors were polled and removed from the courtroom, Petitioner's counsel argued that the verdict did not follow the evidence. The circuit court directed the parties to file post-trial motions.

Petitioner filed a written motion for a new trial, arguing that the jury's verdict awarding no damages for her past and future pain and suffering was wrong in light of the jury's finding that Petitioner was injured as a proximate result of the automobile accident. Petitioner specifically argued that the jury's verdict was inconsistent because while the jury determined that Petitioner was injured, it awarded no damages for her pain. Petitioner also argued that the verdict was inadequate. Respondent opposed the motion for a new trial, arguing that the jury's decision to award no damages for pain and

suffering was entitled to great deference and that the jury's verdict was supported by Respondent's evidence.

The circuit court denied Petitioner's motion for a new trial by order entered July 28, 2015. In its order, the circuit court found that there was not clear uncontroverted evidence of Petitioner's actual pecuniary loss, including medical bills and other damages. Thus, the damages sought by Petitioner for her past and future pain and suffering were indeterminate and unliquidated. The circuit court reasoned that because Petitioner chose not to seek damages for her medical bills or other pecuniary loss, the jury's award of no damages to Petitioner should be entitled to great weight and deference. It is from the court's July 28, 2015, order that Petitioner now appeals.

We review the denial of a motion for a new trial as follows:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia-Pacific Corp.*, 159 W. Va. 621, 225 S.E.2d 218 (1976). In terms of inadequacy of the verdict, we have said:

> In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

Syl. pt. 3, *Biddle v. Haddix*, 154 W. Va. 748, 179 S.E.2d 215 (1971).

While both Petitioner and Respondent present arguments on the inadequacy or adequacy of the jury's award of damages for Petitioner's losses, we need not address this issue. Instead, the core issue presented in this appeal is whether the jury verdict was inherently inconsistent. While the lower court's order denying a new trial does not directly discuss any inconsistencies in the verdict, Petitioner did allege in her motion for a new trial that the verdict was inconsistent. Instead of addressing these *inconsistencies*, the circuit court's order instead focused on the *adequacy* of the jury's award of zero dollars for Petitioner's losses. "When jury verdicts answering several questions have no logical internal consistence and do not comport with instructions, they will be reversed and the cause remanded for a new trial." Syl. pt. 1, *Reynolds v. Pardee & Curtin Lumber*

4

*Co.*, 172 W. Va. 804, 310 S.E.2d 870 (1983).[1] Petitioner argues that the jury's finding that Petitioner was injured as a result of the accident—an accident that Respondent admits was his fault—is inconsistent with an award of zero damages for her losses.

In determining whether jury verdicts are inconsistent, "such inconsistency must appear after excluding every reasonable conclusion that would authorize the verdict." *Prager v. City of Wheeling*, 91 W. Va. 597, 599, 114 S.E. 155, 156 (1922). While this Court has previously addressed alleged inconsistencies in jury verdicts, this is an instance where the Court has been asked to examine the issue in the context of an automobile accident, where a jury finds liability on the part of the defendant but awards no damages. The Alabama Court of Civil Appeals recently examined an almost factually identical scenario in *Daniel v. Passmore*, 998 So.2d 1079 (Ala. Civ. App. 2008). In *Daniel*, the plaintiffs, a wife and husband, were involved in an automobile accident with the defendant. *Id.* at 1080. The jury returned a verdict in which it determined that the defendant was liable for the automobile accident. *Id.* The jury awarded $600 to the wife and $0 to the husband. *Id.* On appeal, the Alabama court found that a jury verdict awarding $0 to the husband was inconsistent with the jury's decision regarding the defendant's liability. *Id.* at 1081. The court reiterated that "'where a jury in a negligence action returns a verdict for the plaintiff but awards *no* damages such a verdict is inconsistent as a matter of law. *Thompson v. Cooper*, 551 So.2d 1030 (Ala.1989) (emphasis added). . . .'" *Id.* 989 So.2d at 1080. The jury verdict in the case at bar is similarly inconsistent.

Recently, this Court examined an inconsistent verdict in *Modular Building Consultants of West Virginia, Inc. v. Poeria, Inc.*, 235 W. Va. 474, 774 S.E.2d 555 (2015). In *Poeria*, the jury determined that the defendant was negligent but that the defendant did not breach its lease agreement. *Id.* at 479, 774 S.E.2d 560. On appeal, the plaintiff argued that the jury's findings were inconsistent because in order to be negligent, the plaintiff would have had to have breached the lease agreement. *Id.* This Court determined that the verdict was not inconsistent because specific disputed facts admitted during trial could support the verdict. *Id.* at 479–80, 774 S.E.2d at 560–61.

The present case, as with the *Daniel* case, is easily distinguishable from *Poeria*. Unlike *Poeria*, here there is no factual dispute that Respondent caused the accident and that Petitioner suffered injuries as a result of that accident. While there may be dispute as to whether the pain Petitioner experienced after her fall, which occurred about a month after the accident, was attributable to the accident, it is uncontroverted that prior to the fall, Petitioner experienced pain. Furthermore, Respondent's expert witness acknowledged that Petitioner's injuries would cause pain.

---

[1] The petitioner and respondent did not object to the instructions and do not raise instructional error in this appeal.

In the present appeal, the jury resolved any questions of injuries by making a finding that Petitioner was injured as a proximate result of the automobile accident. The award of zero dollars in damages is inherently inconsistent with the finding that Petitioner was injured as a proximate result of the accident. Petitioner's past pain and suffering is amply supported by her own testimony, her husband's testimony and the testimony of her treating chiropractor. We therefore conclude that Petitioner is entitled to a new trial to determine her damages as a result of Respondent's negligence.

For the reasons stated above, this Court reverses the July 28, 2015, order denying Petitioner's motion for a new trial, and we remand this case to the circuit court for a new trial on damages.

Reversed and remanded.

**ISSUED: November 17, 2016**

**CONCURRED IN BY:**
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman

**CONCURRING AND WRITING SEPARATELY:**

Chief Justice Menis E. Ketchum

**DISSENTING AND WRITING SEPARATELY:**

Justice Allen H. Loughry II

Chief Justice Ketchum, concurring**:**

The jury returned inconsistent interrogatory answers in the verdict form. The first interrogatory asked if the plaintiff was injured as a proximate result of the car wreck. The jury answered "yes." However, the jury's second interrogatory answer stated that the plaintiff was entitled to zero damages for her injuries.

After the inconsistent interrogatories were returned, the plaintiff's lawyers did not request that the court "return the jury for further consideration of its answers" and award damages based on its finding that the plaintiff was injured in the car wreck. *See*

6

W.Va.R.C.P. 49(b).  If the plaintiff's lawyers had requested the jury be required to further deliberate, the court, in its discretion, could have returned the jury for further deliberation on damages.  *Id.*

Generally, any objections to the verdict form based on defect or irregularity must be made prior to the jury's dismissal.  Syllabus Point 2, *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999) ("Absent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form.").   The rationale for requiring an objection prior to the jury's dismissal is "in order to give the trial court the opportunity to correct any infirmity in the verdict while correction is still possible." *State Farm Mut. Auto. Ins. Co. v. Weber*, 767 S.W.2d 336, 338 (Mo.Ct.App.1989).  If no objection is made prior to the jury's dismissal, any defect or irregularity is waived.

However, the failure to object to defects or irregularities is not applicable to post-trial motions seeking relief based on the inadequacy of the damages awarded. Syllabus Point 4, *State ex rel. Valley Radiology, Inc. v. Gaughn*, 220 W.Va. 73, 640 S.E.2d 136 (2006) ("The general rule of waiver established by this Court in *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999), which requires that any objections to the verdict form based on defect or irregularity be made prior to the jury's dismissal, is not applicable to post-trial motions seeking relief based on the inadequacy of the damages awarded.").  The Court explained its rationale for this holding as follows:

> This is because a request for a new trial based on the inadequacy of damages is not a procedural objection to the verdict form, but a substantive objection to the amount of damages awarded in view of the evidence presented and the findings of the jury as to fault.  Consequently, there is no basis for invoking the waiver rule established by this Court in *Combs* when the post-trial objection is solely to the adequacy of the damages.

*Id*. at 78, 640 S.E.2d at 141.

Even if the plaintiff's lawyers waived any defect in the verdict form, I still would grant a new trial on damages.  The defendant did not assert that the plaintiff failed to object to the inconsistent interrogatory answers and that the plaintiff waived the right to a new trial.  Waiver was not argued before the trial court or before this Court in the present appeal.

Loughry, J., dissenting:

The majority's transparent attempt to "hide" its grossly erroneous conclusion in a memorandum decision makes it even more important that the curtain be pulled back to reveal their improper analysis and incorrect result. While I have not previously hesitated to criticize the majority when its analysis bends to reach the result it seeks, I seldom find the majority so willing to ignore our precedent for the sole purpose of excusing the misguided strategies of parties and/or their counsel. In the instant matter, the petitioner so misapprehended the strength of her case that she intentionally forewent seeking special damages, hoping the jury would find the nature of her injury so compelling that it would more than compensate her in general damages. When the jury awarded her *no* damages, undoubtedly due to the hotly contested nature and extent of her injury, she decried the verdict as inadequate. The majority, in a stunning invasion of the jury's province, rewards her miscalculation and strategical error with a "do-over" and badly fumbles the law in the process. Accordingly, I respectfully dissent.

The petitioner was injured in an automobile accident for which the other driver admitted liability. Immediately post-accident, she sought treatment at the emergency room; she subsequently underwent physical therapy as well as treatment with a chiropractor and neurologist for neck and back pain. However, the petitioner also indisputably had pre-existing degenerative disc disease and a congenital condition unrelated to the accident. More importantly perhaps, the petitioner fell approximately one month after the accident, a fact that she did not fully disclose to at least one of her medical providers nor to an independent medical evaluator. Prior to trial, the petitioner withdrew her demand for all past and future special damages, including medical expenses and lost wages, seeking only general damages for "past and/or future physical and mental pain and suffering, and reduced ability to enjoy life." The verdict form reflected a single line for such damages, upon which the jury entered "0."

Before discussing how the substantive law of this State compels upholding the jury's verdict, I pause to illustrate the utter mangling of the issues presented in the majority's decision. The majority concludes that, despite the petitioner plainly advancing a challenge to the *adequacy* of the verdict, what she "meant" to challenge was an *inconsistency* in the verdict. The majority proceeds to conclude that the verdict is inconsistent simply because the jury found that whatever injury the petitioner suffered was not worthy of a monetary award. The majority is wrong.

Assuming, *arguendo*, that the petitioner had challenged the verdict based on an inconsistency, the very case law upon which the majority relies would actually require it to find such challenge had been waived. In *Modular Building Consultants of West Virginia, Inc. v. Poerio, Inc.*, 235 W.Va. 474, 480 n.4, 774 S.E.2d 555, 561 n.4 (2015), we observed that a failure to object to the verdict while the jury is still empaneled constitutes a waiver of a challenge to an inconsistent verdict. We observed that such

8

waiver constituted "additional grounds" for finding against the petitioner's challenge to the verdict inasmuch as its counsel did not object to the inconsistent verdict "at the time the verdict was returned and before the jury was discharged." *Id.* In support, we stated:

> The Court has held that "[a]bsent extenuating circumstances, the failure to timely object to a defect or irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form." Syl. Pt. 2, *Combs v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999). Moreover, "[t]he right [to clarification of an irregular verdict] after waiver cannot be reclaimed and revived by a motion for a new trial." *Id.* at 107, 516 S.E.2d at 511.

*Poerio,* 235 W.Va. at 480 n.4, 774 S.E.2d at 561 n.4. The petitioner herein unquestionably made no such objection at the time the verdict was rendered in this action.

However, this analysis regarding waiver of challenges to inconsistent verdicts is wholly inapplicable because it is clear that the petitioner did not challenge the *inconsistency* of the verdict, but rather the *inadequacy* of the verdict as reflected in her assignments of error, briefs, and analysis. Even if the petitioner had not so characterized her challenge, our prior decisions clearly demonstrate that an objection to a $0 award for pain and suffering is a challenge to the adequacy of the verdict. Moreover, such challenge is a substantive, rather than procedural, objection that requires an entirely different analysis: "[A] request for a new trial based on the inadequacy of damages is not a procedural objection to the verdict form, but a substantive objection to the amount of damages awarded in view of the evidence presented and the findings of the jury as to fault." *State ex rel. Valley Radiology, Inc. v. Gaughan*, 220 W.Va. 73, 78, 640 S.E.2d 136, 141 (2006). This is precisely the argument advanced by the petitioner herein. To the extent the distinction between inadequate and inconsistent verdicts is not obvious, this Court explained the difference:

> In contrast to *Combs* [*v. Hahn*, 205 W.Va. 102, 516 S.E.2d 506 (1999)] where the jury simply left two blanks without any number on them at all, the jury in this case inserted a zero on the lines designated on the verdict form for making an award to compensate the Respondents for pain and suffering and lost income. Whereas in *Combs* there was uncertainty that remained following the dismissal of the jury due to the incompleteness of the verdict form, in the case *sub judice* there was no confusion as to what the jury intended to award.

9

*Valley Radiology*, 220 W.Va. at 77, 640 S.E.2d at 140. We likewise made a similar distinction in *Marsch v. American Electric Power Co.*, 207 W.Va. 174, 179-80 n.6, 530 S.E.2d 173, 178-79 n.6 (1999), wherein we observed, again contrasting *Combs*, that

> [t]he defect in *Combs* was the jury's failure to place any dollar amount on the verdict form for general damages. *In the present case, a zero was placed on the appropriate lines for the jury's determination of damages, [therefore] . . . their precise challenge on appeal is neither to the verdict form nor any inconsistency of the jury verdict. Rather, their challenge is to the inadequacy of the damages awarded by the jury,* which requires no trial objection to preserve the issue for appellate review. In its allegations of waiver, Ohio Power blurs the lines between three distinct issues: defective verdict forms, inconsistency of the verdict, and inadequacy of the damages.

*Id.* at 179-80 n.6, 530 S.E.2d at 178-79 n.6 (emphasis added). The majority confuses the exact same issues, using the wrong analysis to reach a similarly wrong result.

Turning now to the actual substance of the petitioner's appeal, the petitioner maintains that she made a "tactical decision" not to introduce medical bills as the result of a "popular" trend to relent on seeking recovery of medical expenses where those costs are disproportionately small compared to the "severity" of the injury. The petitioner cites a "plaintiff's attorney" guide on damages in support of this trial strategy. However, this misguided tactic was previously met with similar results. In *Adkins v. Foster*, 195 W.Va. 566, 466 S.E.2d 417 (1995),[1] the appellant introduced no out-of-pocket expenses for past medical treatment or lost wages, and the jury returned a verdict of $0. In discussing the jury's verdict, we observed that the trial court had astutely noted:

> . . . I think one of the problems the plaintiff had in this case was that the plaintiff made no claim for any out-of-pocket expenses and no claim for any lost wages which would set the stage for this jury to see that there's some—something of a loss.
>
> It was all dealing with future losses, and I just thought that that was—had some way to maybe create a mind-set for the

---

[1]The jury had originally awarded approximately $222,000.00 in damages; this verdict was appealed and we remanded for a new trial for reasons not relevant to the issues presented herein.

10

jury. There were no claims for—as I said, doctor bills, or hospital bills, or prescription bills, or any other out-of-pocket expenses or lost wages, and I think that is a problem in how the case was presented.

*Id.* at 570, 466 S.E.2d at 421. This Court further observed that "the appellant, for whatever reason, did not adduce evidence of the cost of any treatment indisputably related to the injury of which the appellant complained." *Id.* at 571, 466 S.E.2d at 422. Commenting further, we stated that "it appears that all of the damages evidence adduced by the appellant was controverted by the appellees to some extent, either as to its relation to this injury or otherwise." In rejecting the claim that the verdict was inadequate, this Court found:

> In the present case, as previously indicated, the appellant introduced no evidence of actual doctor or hospital bills, or prescription bills, or any other out-of-pocket expenses or lost wages. *If she had introduced such evidence, and if it were reliable, this Court would be compelled to conclude that she was entitled to a new trial on damages . . . .* However, given the evidence adduced, viewed in the light most favorable to the defendant, we cannot say that the jury was compelled to return a verdict awarding damages to the appellant.

*Id.* at 572, 466 S.E.2d at 423 (emphasis added). Like the Court in *Adkins*, I suspect the jury may have found the absence of any evidence concerning the petitioner's medical bills or lost wages was a reflection on the credibility of her injury. This lack of evidence, along with the respondent's vigorous challenge to the petitioner's personal credibility, pre-existing conditions, and subsequent injury that occurred one month after the vehicle accident, easily explains the jury's conspicuous conclusion that the petitioner was not injured to an extent that warranted a monetary recovery.

The petitioner's tactical miscalculations aside, the majority's willingness to reward these miscalculations by disregarding virtually identical cases where this Court upheld the refusal to award general damages is astonishing. First, I note the litany of syllabus points firmly instructing this Court not to interfere with jury awards for pain and suffering, unless it can discern some patent error:

> Compensation for pain and suffering is an indefinite and unliquidated item of damages, and there is no rule or measure upon which it can be based. The amount of compensation for such injuries is left to the sound discretion of the jury, and there is no authority for a court to substitute its opinion for that of the jury. A mere difference in opinion between the

11

court and the jury as to the amount of recovery in such cases will not warrant the granting of a new trial on the ground of inadequacy unless the verdict is so small that it clearly indicates that the jury was influenced by improper motives.

Syl. Pt. 2, *Richmond v. Campbell,* 148 W.Va. 595, 595, 136 S.E.2d 877, 878 (1964). Nor can a mere difference of opinion on how the evidence could have or should have been viewed support overturning the jury's verdict: "We will not find a jury verdict to be inadequate *unless it is a sum so low that under the facts of the case reasonable men cannot differ about its inadequacy*." Syl. Pt. 2, *Fullmer v. Swift Energy Co., Inc.*, 185 W.Va. 45, 404 S.E.2d 534 (1991) (emphasis added).

Second, this Court has made clear that these admonitions are even more imperative where, as here, the evidence on this issue is indisputably in conflict: "'It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting.' Point 3, Syllabus, *Long v. City of Weirton, W. Va.*, (1975) [158 W.Va. 741,] 214 S.E.2d 832." Syl. Pt. 2, *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979); *see also* Syl. Pt. 4, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973) ("'It is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury on such facts will not ordinarily be disturbed by this Court.' Point 2 Syllabus, *Graham v. Crist*, 146 W.Va. 156, (118 S.E.2d 640.)"); Syl. Pt. 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963) ("'When a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence or without sufficient evidence to support it.' Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894."). Further, in addressing this conflicting evidence, we are bound to view the conflict in the light most favorable to the defendant: "In an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." Syl. Pt. 1, *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983).

This Court has found these directives so clear that it has twice upheld verdicts containing no pain and suffering award in decisions that are virtually identical. In *Marsch,* 207 W.Va. 174, 530 S.E.2d 173, the jury awarded special damages, but no general damages for pain and suffering or loss of enjoyment of life. The plaintiff, like the petitioner herein, argued before this Court that he "presented adequate testimony of some degree of pain and suffering incurred during the fall and that the jury verdict must be set aside." *Id.* at 182, 530 S.E.2d at 181. Similar to the case at bar, the defendant introduced evidence "tending to discount the existence of pain and suffering and indicating that the shoulder pain was due to a preexisting shoulder injury and the subsequent shoulder injury which occurred at home." *Id.* at 182, 530 S.E.2d at 181. In upholding the jury's verdict, this Court stated:

12

> This Court has a responsibility to refrain from substituting its own judgment for that of the jury regarding the pain and suffering damages. We find that the absence of pain and suffering damages was supported by the evidence. The jury was presented with conflicting evidence, and *some degree of difficulty was therefore encountered in separating the causes of any pain and suffering endured by the Appellant*. As the Supreme Court of Illinois succinctly expressed in *Snover v. McGraw*, 172 Ill.2d 438, 217 Ill. Dec. 734, 667 N.E.2d 1310 (1996), a jury may award pain-related medical expenses and may simultaneously determine that evidence of pain and suffering was insufficient to support a monetary award.

*Marsch*, 207 W.Va. at 182-83, 530 S.E.2d at 181-82 (emphasis added). Similarly, in *Big Lots Stores, Inc. v. Arbogast*, 228 W.Va. 616, 723 S.E.2d 846 (2012), the plaintiff was awarded special damages, but nothing for pain and suffering. As we observed, "[o]f importance to our examination in *Marsch* was the fact that, just as in this case, the plaintiff's preexisting and subsequent injuries may have made it difficult for the jury to distill the amount of pain and suffering specifically attributable to the subject injury." *Big Lots*, 228 W.Va. at 620, 723 S.E.2d at 850. In upholding the verdict, this Court noted the jury heard testimony "challenging [plaintiff's] credibility" concerning her pain and suffering and testimony suggesting her pre-existing and subsequent injuries were to blame for her pain. *Id.*

The petitioner argues that the jury heard uncontroverted evidence that she sustained "some" injury as a result of the vehicle accident and had endured pain and suffering, and that the jury specifically found she had sustained an injury. However, as demonstrated in the cases above, merely sustaining an injury does not necessarily entitle a plaintiff to an award of damages for pain and suffering. Certainly, in both *Marsch* and *Big Lots*, the jury found an injury and awarded special damages, but no general damages. Nevertheless, in those cases, this Court found that our unmistakable jurisprudence precluded it from interfering with the jury verdict where there was conflicting evidence regarding the nature and extent of an injury compelled it to uphold these verdicts. The conflict in the evidence in *Marsch* and *Big Lots* is *identical* to the conflict presented in the case *sub judice, i.e.*, the existence of pre-existing conditions and a subsequent injury, along with testimony challenging the petitioner's credibility concerning her injury. As observed in *Marsch*, a jury may "'determine that evidence of pain and suffering [is] insufficient to support a monetary award.'" 207 W.Va. at 182, 530 S.E.2d at 181 (quoting *Snover v. McGraw*, 667 N.E.2d 1310, 1315 (Ill. 1996)); *see also Hinson v. King,* 603 So.2d 1104 (Ala. Civ. App. 1992) (awarding past medical expenses, but not damages for pain and suffering, future medical expenses, and wages, was permissible); *Randles v. Lowry*, 84 Cal. Rptr. 321, 324 (Cal. Ct. App. 1970) ("[A]n award for the exact amount of,

13

or even less than, the medical expenses is not necessarily inadequate if there is a conflict as to whether the plaintiff suffered any substantial injury or pain."); *Symon v. Burger,* 528 N.E.2d 850, 852 (Ind. Ct. App. 1988) ("When a jury awards a personal injury plaintiff the exact amount, or approximately the exact amount, of his or her claimed medical expenses and other special damages but makes no allowance for pain and suffering, the verdict is not necessarily improper or irregular[.]"); *Miller v. Swift*, 42 S.W.3d 599, 603 (Ky. 2001) (upholding jury's refusal to award pain and suffering damages where "the jury made a conscious decision to award nothing," noting "[t]he civil justice system uses juries to decide exactly these types of factual disputes"); *Hunter v. Sorensen*, 266 N.W.2d 529, 533 (Neb. 1978) ("The evidence on the cause, nature, and extent of plaintiff's injury was conflicting . . . . [and] [t]he jury could reasonably have concluded that plaintiff experienced no pain and suffering, or if he did, that it was de minimis."); *Wheeler v. Huston*, 605 P.2d 1339, 1345 (Ore. 1980) ("[T]he jury may conclude that the plaintiff suffered no general damages . . . . Such verdicts are valid and include cases in which (a) the plaintiff's evidence of injury is subjective, (b) there is evidence that the plaintiff's injuries for which general damages are claimed were not caused by the accident, and (c) the objective evidence of a substantial injury sustained by plaintiff is controverted by other competent evidence, or could be disbelieved by the trier of fact."); *Catalano v. Bujak*, 642 A.2d 448, 451 (Pa. 1994) ("It would appear that the jury simply disbelieved evidence of damages in excess of what it awarded. It is not for any reviewing court to dictate what evidence a jury must believe.").

Nonetheless, the petitioner herein clings desperately to *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983), wherein this Court held that a verdict is inadequate where it does not include "elements of damage which are specifically proved in uncontroverted amounts and *a substantial amount as compensation for injuries*." 173 W.Va. at 549, 318 S.E.2d at 599, syl. pt. 3, in part (emphasis added). However, as noted above, the petitioner's pain and suffering was in no way "uncontroverted." In fact, it is clear that the entire reason the case was submitted to a jury was because the nature and extent of the petitioner's injury was controverted; it was, in fact, the exclusive focus of the trial. The petitioner claimed she was injured, whereas the respondent contended the petitioner's complaints were the result of pre-existing conditions, a subsequent injury, and were–on the whole–not credible. The parties' attorneys implored the jury in their opening statements and closing arguments to assess the evidence and determine the nature and extent of the petitioner's injury, as there was literally nothing else in dispute.

More importantly, unlike special damages, which are capable of calculation, pain and suffering can never be an "uncontroverted amount." Indeed, the "amounts" awarded for such damages lie solely within the discretion and judgment of the jury. As this Court has recognized,

> "[t]he reason for holding parties so tenaciously to the damages found by the jury in personal torts is that in cases of

14

> this class there is no scale by which the damages are to be graduated with certainty. They admit of no other test than the intelligence of a jury governed by a sense of justice."

*Williams v. Penn Line Serv., Inc.*, 147 W.Va. 195, 204, 126 S.E.2d 384, 389 (1962) (quoting *Eby v. Wilson*, 289 S.W. 639, 645 (1926)).  Accordingly, *Kaiser* provides the petitioner with no relief.

Despite its inapplicability to the instant case, I would be remiss if I did not take the opportunity to examine further syllabus point three of *Kaiser*.  Even on its face, this syllabus point is suspect.  As noted above, this syllabus point purports to require a "substantial amount" as compensation for injury, lest the verdict be deemed inadequate.  Why or on what basis this Court would propose to *require* a "substantial amount" as compensation for "injuries" is incomprehensible.  Some injuries frankly do not warrant a "substantial amount"; moreover, some "injuries" may be so inconsequential as to not warrant monetary compensation at all.  This curious proposition warrants closer review.

*Kaiser* cites *Hall v. Groves*, 151 W.Va. 449, 153 S.E.2d 165 (1967), and *King v. Bittinger*, 160 W.Va. 129, 231 S.E.2d 239, 243 (1976), as authority for this syllabus point.  However, neither of these cases hold that *any* injury requires a "substantial amount as compensation."  Rather, they require that *permanent* injuries require a substantial amount as compensation.  As reflected in syllabus point two of *Hall*, "[w]hen in an action for the recovery of damages for personal injuries the verdict . . . does not award a substantial amount as compensation for *permanent* injuries to the plaintiff . . . such verdict is wholly inadequate . . . ."  151 W.Va. at 449, 153 S.E.2d 166, syl. pt. 2, in part (emphasis added); *see also* Syl. Pt. 4, *King*, 160 W.Va. 129, 231 S.E.2d 239 (same).  Therefore, upon careful inspection, it becomes clear that the requirement for a "substantial amount" as compensation applies only to *permanent injuries* and that *Kaiser* badly misstates the law upon which it purportedly relies, eliminating the word "permanent" so as to change these holdings entirely and rendering *Kaiser* the curiosity it is today.

This Court has wisely stated that "[i] is [] true that there is no market price or monetary equivalent for pain and suffering or for injuries of a nonpermanent nature, and [] a jury award for these will generally not be disturbed because of the small amount awarded."  *Keiffer v. Queen*, 155 W.Va. 868, 873-74, 189 S.E.2d 842, 845 (1972).  Nearly forty years later, in *Manor Care, Inc. v. Douglas*, 234 W.Va. 57, 102, 763 S.E.2d 73, 118 (2014) (Loughry, J., dissenting), I echoed these sentiments and cautioned that "[i]t is not for this Court to sit as a super-jury and reductively carve damage awards in the process of attempting to whittle away legal error."  Likewise, it is not for this Court to "sit as a super-jury" and *enhance* damage awards or grant new trials due to perceived "inadequate" verdicts simply because the majority disagrees with the jury's assessment of the credibility of the witnesses and quality of evidence presented.   "The sole measure of

15

damages for pain and suffering is the enlightened conscience of fair and impartial jurors." *Atlanta Transit System v. Robinson*, 213 S.E.2d 547 (Ga. App. 1975). The majority's continued refusal to respect the sanctity and considerable discretion of the jury is very troubling. However, the majority's attempt to twist the petitioner's argument into something which it (mistakenly) believes provides a more direct route to relief is simply inexplicable.

   Accordingly, I respectfully dissent.